[SUNBURY, JULY 3, 1829.]

## SLOAN *against* HANSE.

### APPEAL.

To effectuate the intention of the testator, "*or*" may be construed "*and.*" Devise to A. and B., *or* to their heirs.   B. at the time of making the will was dead, of which the testator was ignorant.   *Held,* that the devise to B. had lapsed, and the testator's heir at law was entitled to recover.

APPEAL from the decision of SMITH, J., at a Circuit Court held at *Williamsport, Lycoming* county, *April* 25th, 1829.

John Sloan brought a writ of partition against *Joseph Hanse,* with notice to the terre-tenants.   The defendant pleaded *non tenent insimul.*

The following case was made for the opinion of the court:—"It is hereby agreed, that the will of *George Sloan,* deceased, is a part of the case:   [The will, so far as relates to the present controversy, was in these words:—'I give, devise, and bequeath unto my two cousins, *Richard Hanse,* and *Joseph Hanse,* of *West Whiteland* township, *Chester* county, all my estate, both real and personal, to be equally divided between them, or to their heirs.']   That *Richard Hanse,* one of the devisees therein named, was dead at the making of the will; having died without issue, unmarried, leaving brothers and sisters:   That the death of the said *Richard Hanse* was unknown to the testator at the making of the will:   That *John Sloan,* the plaintiff in the cause, is the only brother of the said *George Sloan,* deceased, who died unmarried, without issue and without any sisters.—If the court should be of opinion, that the devise to *Richard Hanse* is lapsed, judgment to be entered for the plaintiff; if of a contrary opinion, the judgment to be entered for the defendant."

(Sloan *v.* Hanse.)

His Honour gave judgment for the plaintiff, and the defendant appealed from his decision.

The case was argued by *Armstrong* and *Campbell*, for the appellant, and by *Anthony* and *Lewis*, for the appellee.

*Arguments for the Appellant.*

Two points may be conceded without prejudice to the claims of the heirs of *Richard Hanse*. 1. That it is not a case of joint tenancy; and, 2. That the general rule is, that if the devisee dies before the testator, the devise is void; but, the present case steers clear of both these points. The testator, plainly intending, that his brother *John* should take no part of his estate, real or personal, devises the whole of it to his two cousins, *Richard* and *Joseph Hanse*. In modern times, the intention of the testator, collected from the whole of the will, and giving effect, if possible, to every word contained in it, has been uniformly adopted as a standard rule of construction, unless the estate thereby created is irreconcileable with the rules of law. The intention of *George Sloan*, in forming the present will, is manifest. He did not intend that the devises to his two cousins, or to either of them, should lapse by their deaths in his life time. The words, " or to their heirs," distinctly show this intention. If a testator expressly directs, that a legacy, or devise, shall not lapse by reason of the death of the first taker, and at the same time uses words indicating who shall take in that event, his will shall be enforced and carried into effect. *Sibley* v. *Cook*, 3 *Atk.* 572, is a case of this kind. The words, " or to their heirs," are manifestly introduced not to denote the quantity of estate devised. The word estate, carried the fee without the addition of the word heirs. *Morrison* v. *Semple*, 6 *Binn.* 94. But, they are used to show who should take the land devised, if the devisee named in the will should be dead, or die before the testator. The word "to," is significant, and must not be disregarded. Every word should have effect if possible. It here signifies, that the land shall go over to the heirs as a *descriptio personarum*. They will take as purchasers, not through the decedent, but by way of remainder after him. Immediately on *Richard's* death, *Joseph Hanse* and his sister thus became entitled to what was devised to him. They were his heirs, and there was no other disposition of the property made by the testator in the event of *Richard's* death, than that they should take. But it is contended, that the word "or" should be construed "and." That courts have a power so to alter the text of a will is certain; but, as said in 1 *Yeates*, 319, it can only be done in cases where it is absolutely necessary to support the evident meaning of the testator. But words cannot be arbitrarily expunged or altered. In no case will courts allow a substitution of words, or a construction of them, tending to destroy a will wholly, or in part, instead of supporting it. In 14 *Serg. & Rawle*, 92, it is laid down, that the meaning of every word must be weighed in the sense the testator used it. The reason of a devise lapsing by the death of the devisee in the

testator's life, is given in 2 *Bac. Ab.* 86. Devise to A. and his heirs. A. dies in the life time of the testator; the heir of A. shall take nothing, for the heirs of A. are named only to express the quantity of estate that A. shall take. Thus, the reason for the lapse of the devise is given, and it is clearly distinguishable from the case before us. *Sword* v. *Adams*, 3 *Yeates*, 34, is of the same purport, and governed by the same reasons. *Ware* v. *Fisher*, 2 *Yeates*, 578, agrees in principle; and, *Patterson* v. *Hawthorn*, 12 *Serg. & Rawle*, 112, is much in point. The testator directed that the price of his land should be divided among his children, or their heirs, after the death of the mother—one of the daughters died before the mother. It was held, that the husband of the deceased daughter, as her administrator, was entitled to recover the legacy. TILGH-MAN, C. J., says, "I understand these words as if the testator had said,—to be paid to them, or to such persons as would be entitled to it as their representatives, by the laws of the country." It is urged, that where the intention is doubtful, the heir at law must prevail; but in this case, there can be no doubt of the intention.

The following cases were also cited by the defendant's counsel:— *Steele* v. *Thompson*, 14 *Serg. & Rawle*, 104. 1 *Vez.* 25. *Robinson* v. *Lessee of Adams*, 4 *Dall. Appendix*, 12. *Lessee of Griffith* v *Woodward*, 1 *Yeates*, 319. 2 *Atk.* 86. *Dickinson* v. *Purvis*, 8 *Serg. & Rawle*, 71. *Craighead* v. *Given*, 10 *Serg. & Rawle*, 353. *Lessee of Caldwell* v. *Ferguson*, 2 *Yeates*, 380. 1 *Eq. Ca. Ab.* 231.

*Arguments for the Appellee.*

The plaintiff is brother, and heir at law of the testator, and claims the share devised to *Richard Hanse*, as a lapsed devise. No arguments to be drawn from the doctrine of survivorship in joint tenancy can avail, as the will was made since the act of the 31st of *March*, 1812, abolishing joint tenancy, and the words, "*equally to be divided*," rendered the devise in question a tenancy in common, by the common law. *Evans* v. *Brittain*, 3 *Serg. & Rawle*, 135. *Joseph Hanse* cannot claim as heir to his brother *Richard*, because in that case, he must make his claim through his brother *Richard;* who, not being *esse*, at the time of the testator's death, could take no estate under the will; and, therefore, could transmit none to his heir. *Busby* v. *Greenslate*, *Strange*, 445. *Hodgson* v. *Ambrose*, *Doug.* 337. It has been long established, and has become a rule of property, that the word *heirs*, in devises of this nature, is a word of limitation, and not of purchase. *Co. Litt.* 376, *Note* 1 *of Butler. Ib.* 381. No point is better settled, says his Honour Judge YEATES, than "that a devise of land, or personalty, to a person who dies in the testator's life time, becomes thereby lapsed, by the general rules of common law." *Weishaupt* v. *Brehman*, 5 *Binn.* 118. The authorities in support of this position, are almost numberless.

The case cannot be taken out of the general rule, by the introduction of the disjunctive. "*or*," instead of the conjunctive "*and;*"

(Sloan *v.* Hanse.)

because, even *Joseph Hanse*, the defendant, before he can entitle himself to any share of the property devised, must ask to have the word "*or*" converted into "*and.*" Unless this construction be given, nothing passes by the will. It would be void for uncertainty. No court could carry into effect a devise to A. or to B.; for it would be impossible to determine which of the persons named, was the object of the testator's bounty. If a man gives lands to one, to have, and to hold to him, or his heirs, he hath, says Sir *Edward* Coke, "but an estate for life for the uncertainty." *Co. Litt.* 8. But, in the case of a devise, the courts, where it appeared necessary to prevent the gift from being void, and to carry the testator's intention into effect, have uniformly construed the disjunctive "*or,*" into the conjunctive "*and,*" and *vice versa. Caldwell* v. *Ferguson*, 2 *Yeates*, 380. Devise to *Hugh M'Fadden*, now in *Ireland*, or his heirs, was construed to mean, *Hugh M'Fadden* and his heirs. See also 6 *Cruise*, 183. *Lessee of Hauer* v. *Sheetz*, 2 *Binn.* 532. *Holmes* v. *Lessee of Holmes*, 5 *Binn.* 253. *Lessee of Cheesman* v. *Wilt*, 1 *Yeates*, 411. 2 *Mass.* 554. *Barker* v. *Suretees, Strange*, 1175. There is a clear distinction between those cases where the legatee dies before the testator, and where, after the death of the testator, the legatee dies before the period, or contingency, on the happening of which, the legacy is to be paid. Where there is a person in *esse*, to take at the time of the testator's death, the courts have inclined to construe the legacy as vested, but payable in future. *Patterson* v. *Hawthorn*, 12 *Serg. & Rawle*, 113. And where legacies have been directed to be paid, after the termination of a life estate, to the legatee, or his heirs, the word "*or,*" has been laid hold of to favour the construction, that the legacy had vested on the death of the testator; and, that the intention was, that it should be paid to the legatee, if living, or to the persons entitled as his legal representatives, after his death. But the authorities on this branch of the subject, have no application to cases where the legacy, or devise, never vested at all, for want of a person in *esse*, to take at the death of the testator. In cases of the latter description, the word "*or,*" has never been held to save a lapse. A. devises to his executrix, or her heirs, and she dies in his life time. *Stone* v. *Evans*, 2 *Atk.* 16. So, where there was a bequest to A. for life, and after her decease, legacies were given to B., or to her proper representatives, in case she should not survive A.; then follows a bequest in these words: I also give to each of the children of my sister *Elizabeth*, or their representatives, or representative, two thousand pounds. One child died during the life of the testator, another died after the testator, during the life of A. It was held, that the former lapsed, the latter vested. *Corbin* v. *French*, 2 *Vesey*, 418. The child who died in the life time of the testator, left a widow and children. If the disjunctive "*or,*" could not be so construed by a Court of Chancery, in favour of a widow and children, as to save a lapse, why should it be so construed in a court

(Sloan *v.* Hanse.)

of law in favour of collateral relations? The court will not be inclined to overturn authorities, for the purpose of disinheriting the brother, and heir at law, of the testator. On the contrary, the settled rule is, says Judge YEATES, "that the heir at law, is the favourite at law and in equity, and is not to be disinherited without express words, or necessary implication." *Clayton v. Clayton*, 3 *Binn.* 488.

In regard to the question of intention. It appears that the death of the devisee was unknown to the testator, and there is nothing to show, that such an event was in the most remote degree contemplated by him; he, therefore, could not intend to provide against it; if he had, he would not have used these words. As between his cousin *Richard* and his brother *John*, there may have been reasons which induced him to prefer *Richard;* but, it is not to be inferred from the will, that he intended to prefer the brothers and sisters of *Richard* to his own brother *John.* Had the brothers and sisters of *Richard* stood upon an equal footing with him, in the estimation of the testator, they would have been named equally with *Richard.* The omission is evidence, that the testator did not intend to prefer them to his own brother. They also cited, *Brett* v. *Rigden, Plowden*, 341. *Cro. Eliz.* 422. *Lessee of Smith* v. *Folwell*, 1 *Binn.* 559. *French* v. *M'Ilhenny*, 2 *Binn.* 20.

The opinion of the court was delivered by

GIBSON, C. J.—The intention of the testator, when sufficiently apparent, is undoubtedly the polar star; and, it is sometimes said, that precedents serve rather to obscure, than to elucidate it. It is to be regretted, that this expression has been used by judges whose learning and ability give it currency. In the development of intention, rules of construction, which owe their existence entirely to precedent, and without which, no two minds would often, if ever, arrive at the same conclusion, are indispensable to certainty of result; particularly when, as sometimes happens, the judges are called on to suppose an intention, where, in fact, none ever existed. Any settled rule, which leads to a determinate effect, (in comparison with which, the fulfilment of any particular intent, is of secondary value,) is preferable to a process which would destroy every thing like stability of decision, and leave titles depending on intention, to the decision of chance, and the sport of opinion. A well established rule requires, that an implication by which the laws of descent would be suspended, shall be avoided: in other words, that the plain and certain disposition of the law, shall not be set aside, except in favour of an equally plain and certain disposition of the testator. To apply this to the will before us. The testator devises to his nephews, in exclusion of his brother of the half blood, all his "estate, both real and personal, to be divided between them, *or to* their heirs." Substitute *and* for *or*, and there is no room for dispute. This is resisted, because, as is said, it is never done but to

(Sloan *v.* Hanse.)

effectuate the testator's actual intention. But to take for granted, that the substitution would frustrate the actual intention, is to occupy the whole ground in dispute. It is said, however, that as the word *estate* itself, carries the fee, the word "*heirs*," would be altogether unnecessary, except to signify that the estate was limited alternately to each nephew, or his heirs, with a view to provide for the very contingency that has happened; and, that the inference from this is strengthened by the position of the word in the sentence. We may suspect that such was the object, but we have not sufficient ground to proceed on it as a thing judicially ascertained. The word heirs may undoubtedly be used as a term of special description, by which a devisee may take even in the life time of his ancestor; but, it is appropriately a word of limitation only, and he who would take by it as a word of purchase, must show clearly and incontestably, that it was used in that sense. Had the testator here, meant to provide against accident from the death of either of the principal objects of his bounty, it is reasonable to suppose he would, instead of leaving his meaning to conjecture, have said so in terms. He has not done so; and, the inference to be drawn from the use of a copulative, instead of a disjunctive, is too feeble to disinherit the heir.

Judgment affirmed.