ARMSTRONG vs. MORAN.

*In the matter of the Estate of* JOHN MORAN, *deceased.*

THE testator bequeathed his personal estate, after several legacies, "to his brother James and his children, and the child of his sister Catharine, to be equally divided between them and their heirs and assigns, for ever."— Held, that James Moran and his children took equal shares in the legacy as tenants in common.

Also held, that "the child of his sister Catharine" having died before the decease of the testator, her share lapsed, and there being no gift of the residue, passed to the testator's widow and next of kin, as in case of intestacy.

Also held, that the issue of "the child of his sister Catharine" did not take the share intended for their deceased parent, by way of substitution, under the term "heirs" contained in the bequest; but the word "heirs" was there a term of "limitation," and not of purchase, or substitution.

"And" is never read "or" unless the context of the will favors such conversion.

The provision of the Revised Statutes saving a legacy from lapse in favor of a child or other descendant of the legatee, applies only where the legatee is a child or other descendant of the testator.

A legacy to a sister's child is not a legacy to a descendant of the testator. By descendant is not meant any relative to whom in some possible contingency property might descend, but lineal descendants,—issue of the body.

CHARLES O'CONOR, *for the Executors.*
M. S. BIDWELL, A. M. BURT, *and* JOSEPH BLUNT, *for Legatees.*

THE SURROGATE. John Moran, after several devises and bequests in his will, bequeathed " all his personal es-

tate, except as above, to his brother James, and his children, and the child of his sister Catharine, to be equally divided between them, and their heirs, and assigns, for ever." At the death of the testator, James Moran and five of his children were living, but the child of his sister Catharine had died, leaving a child surviving, and who now claims the share bequeathed to her mother.

There can be no doubt that the terms of the gift to " James Moran and his children," " to be equally divided between them," gave them an interest in the personalty as tenants in common, the word "children" being naturally one of purchase, and not of limitation. (*Buffar* vs. *Bradford*, 2 *Atk.*, 221 ; 7 *Bingham*, 226 ; *De Witte* vs. *De Witte*, 11 *Simon*, 41 ; *In the matter of Sanders*, 4 *Paige*, 293.) Nor can there be any reasonable doubt that the word "heirs" in the expression " to be equally divided between them and their heirs," is, on the other hand, a word of limitation, and not of purchase, although in regard to personal estate it is unnecessary and surplusage, merely expressing what the law would have said had the testator been silent on the subject. There seems to me no hazard of speaking too strongly in saying that no case of authority can be found in the books, where a gift to A. " and his heirs" has been sustained in favor of the next of kin, on the death of A. in the life of the testator, unless an intention to substitute the next of kin in the place of the deceased legatee, so as to save a lapse, could be deduced from some other clause or expression in the will. The mere naked phrase, " and his heirs," standing alone, could never be construed, *alternatively*, so as to substitute the " heirs," in place of a deceased legatee not living at the testator's death, without violating the best established rules of construction. (*Comfirt* vs. *Mather*, 2 *Watts & Serg.*, 450 ; *Dickinson* vs. *Purvis*, 8 *S. & R.*, 71.) It is said, however, that " *and* " may be read " *or*," and the words " *and* their heirs," be changed into " *or* their heirs." But " *and* " is never read " *or*," unless the context of the will favors it,

and the general intention is thereby elucidated or promoted. These words are certainly not ordinarily convertible, and to change one into the other at will, to suit the mood of the reader, would work wondrous mischief with legal instruments, to say nothing of its singular effects upon the meaning of any English author one may chance to take down from the shelf. The change from " *and* " to " *or* " in this case, would be pregnant with consequences, and, therefore, could not be made capriciously, as of an indifferent term, but only could be effected for some reason to be drawn from the context of the will. The very case which is cited to me to show that a legacy to A. " *or* his heirs" does not lapse by the death of A. before that of the testator, shows clearly, that if the words had been, to " A. *and* his heirs," the decision would have been precisely the reverse. The case is that of *Gittings* vs. *McDermott*, 2 *My. & R.*, 69. The Master of the Rolls, in holding that the testator in case of the decease of the legatee, meant to prevent a lapse, and substitute his next of kin as recipients of his bounty, says expressly, " this is the effect of the word ' *or*,' which differs wholly from that which must have been given to the bequest, had the word ' *and* ' been used ;" and Lord Brougham in sustaining the same view, says, " the force of the disjunctive word " *or* " is not easily to be got over. Had it been " *and*," the words of limitation would, of course, as applied to a chattel interest, have been surplusage ; but the disjunctive marks as plainly as possible, that the testator by using it, intended to provide for an alternative bequest." (See also *Waite* vs. *Templer*, 2 *Simon*, 524.) I can have no hesitation, therefore, in declaring the legacy to the child of the testator's sister, lapsed by her death before the testator's decease, according to the rules of the Common Law. (*Sloan* vs. *Hanse*, 2 *Rawle*, 28.)

It is urged, however, that the case comes within the provision of the Revised Statutes in relation to lapsed legacies and devises. That section is as follows : " Whenever any estate, real or personal, shall be devised or bequeathed to

*a child or other descendant* of the testator, and such legatee or devisee shall die during the life-time of the testator, leaving *a child or other descendant* who shall survive such testator, such devise or legacy shall not lapse, but the property so devised or bequeathed, shall vest in the surviving *child or other descendant* of the legatee or devisee, as if such legatee or devisee had survived the testator, and had died intestate." (2 *R. S.*, 3*d ed.*, *p.* 126, § 44.)

The testator died without leaving any issue, and the legacy to his sister's child cannot pass to his sister's grandchild under this section, unless a sister's child may be comprehended under the term, "*other descendant.*" The Revisers "took this section from the laws of Massachusetts, *Vol. I.*, *p.* 94, § 8, and the laws of Virginia, 1*st Vol. Revised Code, p.* 376, § 5 " (3 *R. S.*, *p.* 633, *note*), but the provisions are materially different from that of the Massachusetts Statute. The words of the Massachusetts act, are, " *to any child or other relation*" of the testator, who shall die before the testator, " *leaving issue;*" the Virginia statute, " *any child or other descendant of the testator*" "leaving issue" (now altered to any devisee or legatee); Pennsylvania, " *a child or other lineal descendant of the testator*" "leaving issue;" South-Carolina, " *any child of the testator*" "leaving issue;" Maine, " *child or other relation of a testator*" "leaving lineal descendants ;" Missouri, " *child, grandchild, or other relation* leaving lineal descendants ;" Connecticut, " *child or grandchild of the testator* leaving issue ;" Georgia, " *any person named as a legatee*" "leaving issue;" and the English act, " *a child or other issue of the testator*" " leaving issue." It will be seen that there is a wide range in these various legislative provisions, from that of Georgia, which prevents a lapse in every case where the deceased legatee has left issue, to that of Pennsylvania, which limits the sustentation of a lapsed legacy to the case of a lineal descendant leaving issue. Our statute follows that of Virginia, varying from that of Massachusetts, by rejecting the term " any

child *or other relation*," and adopting instead of it the words, " any child *or other descendant*." The intent of this is obvious, and there is no ground for indulging in such a loose interpretation of the word descendant, as to apply it to any person upon whom property might descend, and thus to extend a word of precise and definite meaning, until it be transformed into an equivalent to the term " relation." It is true the word " ancestor," as used in the act designed to cure defect of blood by alienage, in favor of those to whom the inheritance would pass, has been read so broadly as to include every predecessor in estate, every person from whom property might be inherited (2 *R. S.*, *p.* 38, § 22), whether he be the ancestor in lineal ascent or not. But that is a remedial statute, intended to aid *every person* " capable of inheriting," so that he shall not " be precluded from such inheritance by reason of the alienage of any ancestor." The object of the statute was to benefit every person capable of inheriting, and it might be reasonable to construe its provisions so liberally, as to comprehend under the word " ancestor," every person from whom an estate might be inherited. But the very question in relation to the section respecting lapsed legacies is, *whom* it was intended to benefit, whether *descendants only*, in the proper sense of the term, or every person to whom property might descend. Again, in the Statute of Descents there is no use of the term " ancestor " inconsistent with the idea of ancestor in estate. But whether we refer to the Statute of Descents, or the Statute of Distributions, we are unable to find a single instance of the employment of the word " descendants " in any other signification than that of lineal descendants. It, in fact, nowhere occurs in either place, except in the unequivocal sense of posterity of the body, and to interpret it as a synonyme with descendant in estate, would throw both statutes into utter confusion. For example, the following expressions may be taken, in the Statute of Descents : " In case the intestate shall die without lawful *descendants*, and leaving a

father;" "If the intestate shall die without *descendants* and leaving no father;" "*Descendants and* relatives of the intestate begotten before his death, but born thereafter, shall in all cases inherit," &c.; and in the Statute of Distributions, "If the deceased leave a widow and no *descendant*, parent, brother or sister, nephew or niece," &c.; "If there be a brother or sister, nephew or niece, and no *descendant* or parent;" "If the deceased leave a father, and no child or *descendant*," " descendants *or* next of kin," " descendants *and* next of kin." It thus abundantly appears, that in the statutes disposing of real and personal estate in cases of intestacy, a " descendant" is one sprung from the body of the person spoken of—a lineal descendant—and is never used as synonymous with, or comprehensive of, any other other class of relatives.

If, however, I were to read the term descendant in the section relating to lapsed legacies, so as to apply the benefit of that provision to any one who might take property by descent from the testator, the legacy would not be saved, for the deceased having brothers and sisters living, a grand-niece could not possibly take personalty from him under the Statute of Distributions, there being no representation amongst collaterals beyond brothers' and sisters' children. If, in a given case, descendant is to be construed to mean one who might take by descent from the intestate, the grand-niece in this case does not still come within that class as to the personalty.

But I have no doubt that the true construction of the statute, limits its provisions to the direct lineal descendants of the testator. The variation from the Massachusetts act, which includes "relations;" the adoption of the words " a child or *other* descendant of the testator," thus defining the term as it were, by illustrating it in the case of a " child," the head of a class, and then passing on to other members of the class, " *other* descendants ;" and the repetition of the words in the subsequent part of the section, " and such legatee or devisee shall die during the life-time

of the testator, leaving a *child or other descendant*," all tend to the same conclusion. If "descendant" is to be read so broadly, as to save a lapse in case of a legacy to any relative, then it must be so read through the whole section, and the result will be, that a legacy survives whenever made to a *relation*, who dies leaving a *relation*, an interpretation which will lead manifestly far beyond the intention of the Legislature, and carry the operation of the provision much beyond the most liberal enactments of any of the States, where similar laws prevail.

A term of precise meaning in the law may be so employed in a will, or even in a statute, as to show that it is not to be taken in its ordinary sense. Those are special cases, however; exceptions to the general rule; and in the absence of any thing in the context to draw a word from its usual signification, it must necessarily be interpreted in its ordinary sense. "Before I proceed further," said Lord Cottenham, in the case of *Oddie* vs. *Woodford*, 3 *My. & Cr.*, 617, "I readily admit what Mr. Butler proved from authority, and what without authority cannot but be admitted, viz.: that *descendants* must mean posterity of all kinds;" "attempts have been made," says Mr. Roper, "to induce the Court of Chancery, to put the same construction upon the word *descendants* as upon the term *relations*, but the Court has constantly refused the application." (*Roper on Leg.*, 136.) "A gift to *descendants*," says Jarman, "receives a construction answering to the obvious sense of the term; namely, as comprising *issue* of every degree." (2 *Jarman on Wills*, 32.) "The word issue when not restrained by the context, is *co-extensive* and *synonymous* with *descendants*." (*Ibid.*, *p.* 33.) "The *descendants* form what is called the direct descending line." (*Bouvier's Law Dict. Descendant Line.*) In *Croslly* vs. *Clare*, *Ambler*, 397, the Master of the Rolls said, "the word *descendants* means all those who proceed from the body" of the person named. (See *Pierson* vs. *Garnet*, 2 *Bro. C. C.*, 38, 230 ; 3 *Bro. C. C.*, 367, 369 ; *Bernal* vs. *Berral*, 3 *My. & Co.*, 559, 584 ; *Amb.*,

70, *and note;* *Craik* vs. *Lamb*, 1 *Coll. C. C.*, 489.) I am of the opinion, therefore, that the share of the testator's personal estate bequeathed to the child of his sister, lapsed by her decease in the testator's life-time, and the legacy is not saved by the provisions of our statute. There being no residuary clause in the will, and the legatees not all taking as a class, James Moran and his children take no interest in this share, but it belongs to the widow and next of kin of the deceased, as a portion of his estate, as to which he died intestate ; the widow taking a moiety and two thousand dollars of the surplus, and James Moran the remainder, as the only next of kin of the testator.