1. PROPERTY—PROCEEDS OF REAL ESTATE—JURISDICTION OF SURROGATE.
    Where an incompetent inherited real estate, the proceeds subsequently sold by his committee, under the statute, are real estate in the hands of his administratrix, over which the surrogate has no jurisdiction, except to pay any balance of debts and funeral expenses on the exhaustion of his personal property.

2. SAME—CONVERSION.
    Real estate of an incompetent uncle was sold in partition among the heirs, and the proceeds were deposited with the county treasurer during the tenancy by the curtesy in them of the aunt. *Held*, that on the payment of such proceeds to the committee of the incompetent on the death of the aunt and her husband they were to be deemed personalty.

¶ 1.  See Conversion, vol. 11, Cent. Dig. § 14.

In the matter of the account of Kate Wells Reeve, administratrix of the estate of Jeremiah G. Wells.　Decree rendered.

Thomas Young, for administratrix.

Charles B. Partridge, for Thomas O. Wells.

Harry G. Stephens, special guardian for infants, children of a deceased half-brother of decedent.

PETTY, S.　The brother, Thomas O. Wells, claims the entire fund, under Real Property Law, § 290, reading as follows:

"Sec. 290. Relatives of the half-blood.—Relatives of the half-blood and their descendants, shall inherit equally with those of the whole blood and their descendants, in the same degree, unless the inheritance came to the intestate by descent, devise or gift from an ancestor; in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

The administratrix and the guardian unite in claiming that the brother is entitled to one-third, the administratrix, as a half-sister of decedent, one-third, and the infants, as children of a deceased half-brother of decedent, one-third between them.　The fund is in money, but this is claimed by the brother to be real estate under the section above quoted and section 2359 of the Code of Civil Procedure.　It is to be first determined, therefore, whether the fund be real or personal property.　The estate consists of what are really three different funds: First.　The share of the deceased in the personal estate of his deceased uncle, Jacob Rogers.　This is consequently personalty.　Second.　Proceeds of the sale of real estate owned by decedent, and sold by his committee pursuant to statute.　This real estate was inherited by deceased from his uncle, said Jacob Rogers.　This part of the estate in the hands of the administratrix is realty.　Ford v. Livingston, 140 N. Y. 162, 35 N. E. 437.　The third division of the estate came to the deceased from the sale of real estate in partition.　An aunt of the decedent inherited certain realty from the said Jacob Rogers, her brother.　Upon its sale the amount due her was deposited with the county treasurer by virtue of the curtesy of her husband therein.　Her husband surviving her, it was, on his death, distributed in part to the administratrix of the decedent, Jeremiah G. Wells, a share therein having passed to him by virtue of the death of his aunt.　Had Jeremiah G. Wells been living, and competent, this share would have been paid to him as the ordinary division is made in such matters, and would have at once upon such payment become personal property.　That the payment was postponed until the death of the life tenant husband cannot work a change in the interest of the deceased, nor can the fact that when the time for such payment came he was deceased.　It appears from the order of the supreme court that this share was directed .paid to his administratrix, showing that it was there regarded as personal property.　It is to be noted also that section 2359 of the Code is limited to the sale of realty of incompetents by their committees, and does not apply to actions of partition.　The money was paid to the accountant, as administratrix, by court order, and as personalty.　In that proceeding Thomas O. Wells, claiming here that this is realty, was a party, and made no objection to such payment, although it was his right to demand its payment to himself as the sole heir of Jeremiah G. Wells.　Under

these circumstances this court must declare it to be personalty. Having been lawfully received by the administratrix in money, and she accounting for it as such, it is not for the court appointing her to inquire too closely into the source of its payment to her. Had she contributed this amount personally from philanthropic motives, no one would be heard to say that it in fact never belonged to the deceased. Had she stolen it, it would not be for this court to cry the theft. It is sufficient that she brings the estate into court as administratrix, asks its distribution, and her discharge. We have, therefore, part of the estate personal and part real. It happens that the personalty is insufficient to pay the debts and funeral expenses, it being primarily liable therefor. Code Civ. Proc. §§ 2359, 2717; Kingsland v. Murray, 133 N. Y. 170, 174, 30 N. E. 845. The balance of the estate being realty, proceeds of the sale of the land of the incompetent, this court must pay therefrom the balance of said debts and expenses, and remand the remainder into the possession of the committee. Section 2359, supra.

In case any part of the estate is found to be realty, I am requested by counsel to indicate the ownership thereof. This is the real question in the case; and while the surrogate's court has no jurisdiction other than to decree the balance back into the hands of the committee, as above shown, my opinion as to the ownership is added pursuant to said request. We have real estate, therefore, claimed entire by a full-blood brother of the decedent, and claimed in part by a half-sister and children of a deceased half-brother. It is at once apparent that the solution of this question depends entirely upon the meaning of the word "ancestor," as used in the statute first herein quoted. If it means "father" or "grandfather," then the contention of the administratrix and guardian is correct, and this is in fact its popular meaning. I am of the opinion, however, that such is not its legal meaning. It appears from the exhaustive examination given this word in McCarthy v. Marsh, 5 N. Y. 263, that it is not to be limited in its meaning to lineal ancestors or progenitors. The case is not in point, as claimed by counsel, only to the extent that it relates to another section than section 290, above quoted. It relates, however, to a section which was and still is a part of the same law as section 290, viz., section 294 of the real property law; and the word "ancestor" used throughout this law must be with reference to the same person. It is to be noted that the word is used in the statute without qualification, and, as said by Foot, J., in this case:

"Hence the inference is pretty plain that our revisers and legislature used the terms 'any ancestor' without the qualifying words 'lineal' or 'collateral' with the intent of embracing ancestors of both classes. If they had designed to include the one and exclude the other, it is almost, if not quite, certain, that they would have used the appropriate qualifying words."

The administratrix cites Valentine v. Wetherill, 31 Barb. 655, as supporting her right to share in the real estate. It seems, however, that this case, with Conkling v. Brown, 57 Barb. 269, and Wheeler v. Clutterbuck, 52 N. Y. 67, holds otherwise, and supports McCarthy v. Marsh, supra. Reference to the following diagrams will make this clear:

It will be seen that in the Valentine Case, C. inherited one-third of the realty of V., as did A. and H. C. subsequently inherited A.'s third and H.'s third also. On C.'s death, who was his ancestor? As to the third he took from V., V. was the ancestor, and H. W., being not of the blood of such ancestor, was excluded. As to the third he took from H., H., and not V., was the ancestor, and so H. W. shares therein, being of the blood of the ancestor, H. The same is true of the share inherited by C. from A. The ancestor here is therefore in the last descent a brother. So in Wheeler v. Clutterbuck, which is practically the same case. The one-half inherited by P. from his ancestor, R., W. could not share in, not being of such ancestor's blood. The half inherited by L. from R., however, passed to P., not from R., but from L., who, as to this half, is the ancestor, and W. shares therein, being of the blood of L. As the court says (at page 70):

"We think it clear that section 15 of the statute [section 290 above quoted] refers to the descent, devise, or gift last preceding the death of the intestate; that the 'ancestor' referred to is the immediate ancestor from whom the intestate received the inheritance, devise, or gift; and that in the present case Letitia was such ancestor, and the stock of descent as to the one half of the premises."

So here we have an ancestor who was a sister. In Conkling v. Brown, the descent was from B. M., a brother, to M. C., a sister, and A. M. W., a great-nephew. On the death of A. M. W. the realty descended to his mother, excluding the half-blood brothers and sisters of A. M. W., because they were not of the blood of B. M., from whom the descent passed to the intestate, A. M. W. Thus the uncle, B. M., was the ancestor. The true rule appears, therefore, to be that the term "ancestor," as used in the real property law, may mean "forefather" or "progenitor" in a given case, but may, and must, in some cases, mean other "relatives"; in other words, that relative of the deceased from whom the intestate acquires his inheritance.

This, applied to the present case, bars the half-sister and the infants. The ancestor of the intestate, Jeremiah G. Wells, was Harriet Horton, or Jacob Rogers, or both, they being brother and sister. On the death of Jeremiah G. Wells, therefore, the inheritance passes to Thomas O. Wells in toto, the half-sister and the descendants of the deceased half-brother being excluded as not of the blood of the ancestor of Jeremiah G. Wells. See, also, Armstrong v. Moran, 1 Bradf. Sur. 314, 318. As a matter of descent, therefore, Thomas O. Wells is entitled to the entire balance in the hands of the administratrix. As a matter of jurisdiction of the surrogate's court, such balance must be decreed back into the hands of the committee whence it came. Submit decree and applications for costs on notice.

Decreed accordingly.