IRVING et al. v. DIAMOND.

No. 337.    Opinion Filed March 9, 1909.

(100 Pac. 557)

1.    INDIANS—Creeks—Descent of Land.    The land allotted to a dead minor Creek freedman, who was living on the 1st day of April, 1899, and who died without issue, descended to his mother as his nearest relation, according to the laws of descent and distribution of the Creek Nation.

2.    SAME.    On the death of such mother intestate, on September 26, 1902, leaving a husband and real property, the same, under sections 2522-2545, Mansf. Dig. (sections 1820-1843, Ann. St. Ind. T. 1899), descended in equal parts to her children to the exclusion of the husband.

(Syllabus by the Court.)

*Error from District Court, Hughes County; John Caruthers, Judge.*

.Action by Wallace D. Diamond against Eliza Irving and others.    Judgment for plaintiff.    Defendants bring error.    Reversed and remanded.

*Lewis C. Lawson,* for plaintiffs in error.—31 Stats. U. S., c. 676, § 28; 32 Stats. U. S. 500, c. 1323, § 6; Stats. Ind. Ter., c. 21, § 1820; *DeGraffenried v. Iowa Land & T. Co.,* 20 Okla. 687.

DUNN, J. This action was begun by Wallace D. Diamond against Eliza Irving, Barney Irving, John Hawkins, and Jamous Hawkins, in the United States Court for the Western District of the Indian Territory, sitting at Wewoka, and was pending at the time Indian and Oklahoma Territories were erected into a state, and was tried in the district court of Hughes county, sitting at Holdenville. It was brought for the partition of the S. W. 1/4 of section 12, township 7 N., range 9 E., among the several parties claiming interest in it. The court in its decree found that the plaintiff owned an undivided two-thirds interest in and to the tract in fee simple, and awarded him this interest. From this decree, and to set it aside, the plaintiffs in error have appealed to this court.

The facts out of which the controversy grows are substantially as follows: Edward Irving was born on the 26th day of December, 1895, and died intestate on the 16th day of August, 1900. He was duly enrolled by the Dawes Commission upon the freedmen roll of the Creek Nation, and after his death, and on October 6, 1902, there was allotted in his name and a deed or patent executed to the tract of land above described. At the time of his death there survived him his father, George Irving, his mother, Mary Irving, and six brothers and sisters, four of whom are the plaintiffs in error, and who were minors, and two of whom had attained their majority at the time of this action. Mary Irving, the mother of said Edward Irving, died intestate on the 26th day of September, 1902, leaving surviving her a husband, and the children above noted as the only issues of her body. The father of the deceased, Edward Irving, the husband of Mary Irving, and the two children who had attained their majority conveyed the land mentioned, by a series of conveyances, to Wallace D. Diamond, plaintiff in the court below, and, as above stated, the court in partitioning the same at his suit recognized his absolute title to two-thirds of the same.

It is contended on the part of plaintiffs in error that the land in its entirety was inherited by the mother on the death of

the allottee, and that on her death it was inherited by her children, and that the deed of the father conveyed no title to Diamond. This contention we believe to be correct.

Section 28 of the act of Congress dated March 1, 1901, entitled "An act to ratify and confirm an agreement with the Muskogee or Creek Tribe of Indians," etc. (31 Stat. 869, c. 676), provides:

"All citizens who were living on the first day of April, eighteen hundred and ninety-nine, entitled to be enrolled under section twenty-one of the act of Congress approved June twenty-eight, eighteen hundred and ninety-eight, entitled 'An act for the protection of the people of the Indian Territory, and for other purposes,' shall be placed upon the rolls to be made by said commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of all the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the · Creek Nation, and be allotted and distributed to them accordingly."

Edward Irving was a citizen of the Creek Nation, was living on the 1st day of April, 1899, and was duly enrolled, but, prior to the time of receiving his allotment of lands, he died, and his allotment, as is seen by the section just quoted, descended to his heirs in accordance with the laws of descent and distribution of the Creek Nation. Section 6 of the Creek laws of descent and distribution in force at that time provided:

"Be it further enacted that if any person die without a will, having property and children, the property shall be equally divided among the children by disinterested persons and in all cases where there are no children, the nearest relation shall inherit the property."

This section of the Creek law has already received a construction at the hands of this court (De Graffenreid v. Iowa Land & Trust Company, 20 Okla. 687, 95 Pac. 625), and in that case it was held that the mother, under the Creek law, was the nearest relation. So that, on the death of the allottee in this case, the mother took his entire estate and property in this land, upon its

being segregated and alloted to him, or in his name. She held and owned this land at the time of her death, September 26, 1902.

On June 30, 1902, Congress passed an act to ratify and confirm a supplemental agreement with the Creek Tribe of Indians. 32 Stat. 500, c. 1323, went into effect on August 8, 1902, and on that date became binding on the United States, the Creek Nation, and all persons affected thereby. Section 6 of this act provides, under the title of descent and distribution, that:

"The provisions of the act of Congress approved March 1, 1901, 31 Stat. 861, in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory: Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek nation: And provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

It will be noted that the foregoing section repealed the law of descent and distribution provided for under the act of March 1, 1901, and that lands and property thereafter descended in accordance with chapter 49 of the Statutes of Arkansas. The portion relevant here is contained in chapter 21 of the Statutes of the Indian Territory (section 1820) which provides:

"When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner: First. To children, or other descendants, in equal parts. Second. If there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts. Third. If there be no children, nor their descendants, father, mother, brother or sisters, nor their descendants, then to the grandfather, grandmother, uncles and aunts and their descendants, in equal parts, and so on in other cases, without end, passing

to the nearest lineal ancestor, and their children and their descendants, in equal parts."

From the foregoing statute we think it quite plain that the title to the land involved descended, on the death of the mother, to the remaining children to the exclusion of her husband, and that the court erred in finding, holding, and partitioning the land under the theory that George Irving by his deed conveyed to the plaintiff an undivided one-half of the same.

We are invited by counsel for plaintiffs in error to discuss and pass upon the question of whether or not George Irving had a life estate by courtesy in this land; but, as the decree of the lower court did not rest upon this, and as the question is briefed on one side only, its scope and consequence, and the difficult highway we tread in passing on Creek Indian land titles, in our judgment justifies us in the invocation of the scriptural rule that "sufficient unto the day is the evil thereof," and we, therefore, pretermit this proposition until it is squarely presented and properly briefed.

The judgment of the lower court is accordingly reversed, and the case is remanded to the district court of Hughes county, with instructions to set aside the decree heretofore rendered, and to proceed in accordance with the views expressed herein.

All the Justices concur.