## HAMILTON et al. v. BAHNSEN et al.

No. 8711—Opinion Filed July 29, 1919.

(Syllabus by the Court.)

1. Indians—Creek Descent—Laws Governing.

The devolution of an allotment on behalf of a deceased Creek citizen which was not selected nor made until after the Supplemental Creek Agreement of June 30, 1902 (32 Stat. at L. 500, chap. 1323), went into effect, is governed by the Arkansas laws of descent and distribution, which by sec. 6 of that act, and by the act of May 27, 1902 (32 Stat. at L. 258, chap. 888), were substituted for the Creek tribal laws of descent and distribution, recognized by a provision of the Original Creek Agreement of March 1, 1901 (31 Stat. at L. 861, chap. 676), sec. 28, which the later acts repeal.

2. Same—After Allotted Lands.

If a Creek citizen dies before receiving his allotment, at the time of his death he is not seised of an inheritable estate in lands afterwards allotted to him or to his heirs, and the descent of such allotment is cast at the time the certificate of allotment is issued and the law in effect at that particular time governs in the devolution of said allotted lands.

3. Same—Allotment Record.

Where there appears on file in the office of the Dawes Commission, in the allotment record of Mack McNally, a paper certified to as "a reservation plat and memorandum slip," which has endorsed upon the same the following: "Reserved March 16, 1901, pending ratification of Creek Agreement," and a description of the land, and testimony is introduced to the effect that at the time said slip and reservation plat were filed, the D wes Commission permitted someone to make an application for this allotment, for Mack McNally, who was then deceased, the plat or memorandum slip having been made prior to the time of the ratification of the Original Creek Treaty May 25, 1901, and Mack McNally having died June 7, 1899, and there being no authority for making such a reservation and, there being no law permitting an allotment to be made to the deceased at that time, nor his heirs, said exhibit, although disclosing that an application for an allotment had been made on said date, gave the heirs no inheritable estate by reason thereof; it appearing that thereafter the Dawes Commission issued an "original mem-orandum of selection," and a certificate of allotment both of which bore the date of October 20, 1902. Held, the date of the certificate of allotment is controlling as to the devolution of said estate.

Error from District Court, McIntosh County; R. W. Higgins, Judge.

Action by Cassie Hamilton and others against John E. Bahnsen and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

Anglin & Hall and Turner & Turner, for plaintiffs in error.

Vernor & Vernor and Stanard, Wahl & Ennis, for defendants in error.

McNEILL, J. This controversy involves the allotments made to the heirs of Mack McNally, a Creek freedman, who died June 17, 1899, leaving him surviving his mother, Belle Wright, nee McNally, a non-citizen of the Creek Nation, and certain brothers and sisters, who were the plaintiffs in the court below and are plaintiffs in error here. The defendants below being the defendants in error here, are in possession of the premises through their tenants and claim title by virtue of a deed executed by the noncitizen mother, Belle Wright, nee McNally, in the fall of 1901, and a certain mortgage executed by Belle Wright.

The question presented is, whether the lands descended to Belle Wright, nee McNally, a noncitizen and being the mother of Mack McNally, or did the same descend to the brothers and sisters of Mack McNally. It is agreed by all parties that if the descent was cast under the Creek law by reason of the act of Congress approved March 1, 1901, known as the "Original Agreement," then the noncitizen mother, Belle Wright, nee McNally, inherited the land, while, on the other hand, if the descent was not cast until after the act of Congress of June 30, 1902, commonly known as the Supplemental Agreement, then the plaintiffs in error inherited the allotments. The plaintiffs in error take the position that the date of the certificate of allotment and the date of the original memorandum of selection, both of which were dated October 20, 1902, that then, and not until then, did there come into being an estate capable of descending. While the defendants take the position that the descent was cast as soon as the allotment of Mack McNally, deceased, was by his heirs selected, and designated and segregated from the common body of land. This they contend was done on the 16th day of March, 1901.

At the trial of the case below, the court

found for the defendants in error, and the plaintiffs bring the case here on appeal.

At the trial of the case below certain facts were agreed to, to wit: That Mack Mc-Nally died June 7, 1899, and that at the time of his death he had made no selection, nor had he received a certificate of allotment for any land in the Creek Nation.

Plaintiffs in error introduced in evidence a part of the records of the Dawes Commission, which was, first, an exhibit designated as "an original memorandum of selection." This was dated October 20, 1902. They then introduced the "original certificate of allotment." which was dated October 20, 1902.

The facts in the case up to this point are identical with the facts in the case of Brady v. Sizemore, 33 Okla. 169, 124 Pac. 615, which case was affirmed by the United States Supreme Court in the case of Sizemore v. Brady, 59 Law Ed. 308. In the case of Brady v. Sizemore, this court stated as follows:

"Where a duly enrolled citizen of the Creek Nation died on March 1, 1901, before receiving his allotment or a certificate of selection therefor, held, that he died seised of no estate of inheritance therein."

"Where a duly enrolled citizen of the Creek Nation died on March 1, 1901, before receiving his allotment, for which on August 23, 1902, certificate of selection issued to his heirs, held, that chapter 49 of Mansf. Dig. of Ark. (Ind. T. Ann. St. 1899, secs. 1820, 1843) governs the devolution of the allotment, as provided by the Indian Appropriation Act of May 27, 1902 (32 St. at L. 258, c. 888), and section 6 of an act of Congress approved June 30, 1902, ratified July 26, 1902 (32 St. at L. 500, c. 1323), known as the Creek Supplemental Agreement, to be applied as if deceased had received title to his allotment and died seised thereof."

The court, in the case of Brady v. Sizemore, speaking through Mr. Justice Turner, stated as follows:

"Grayson died seised of no inheritable estate or vested right in said allotment, and therefore had no allotment upon which said section 28 could operate, but for the further fact, not appearing in the Sanders case, that such was true until August 23, 1902, which was after ratification of the Supplemental Agreement, when his allotment was selected and certificate of selection therefor on said date issued to his heirs. Then, and not until then, did any law of descent and distribution take hold of the then created res and determine its devolution."

And the court further stated as follows:

"Which said chapter 49, being the law of descent and distribution in force at the date of the allottee's certificate, we hold to be the governing statute here."

The Supreme Court of the United States, passing upon the question, stated as follows:

"The devolution of an allotment on behalf of a deceased Creek citizen which was not selected nor made until after the Supplemental Creek Agreement of June 30, 1902 (32 Stat. at L. 500, c. 1323), went into effect, is governed by the Arkansas laws of descent and distribution, which, by sec. 6 of that act, and by the act of May 27, 1902 (32 Stat. at L. 258, c. 888), were substituted for the Creek tribal laws of descent and distribution recognized by a provision of the Original Creek Agreement of March 1, 1901 (31 Stat. at L. 861, c. 676), sec. 28, which the later acts repeal."

In the case of Scott v. Jacobs, 40 Okla. 522, 140 Pac. 148, the court stated as follows:

"And as no res existed for the law to take hold of until November 18, 1901, the date of her certificate of her allotment. * * *"

In the case of McDonald v. Ralston, 65 Oklahoma, 166 Pac. 405, the court stated as follows:

"If a Creek citizen dies before receiving his allotment, at the time of his death he is not seised of an inheritable estate in the lands afterwards allotted to him or to his heirs, and the descent of such allotment is cast at the time the certificate of allotment is issued and the law in effect at that particular time governs in the devolution of said allotted lands."

In the case of Jesse v. Chapman, 68 Oklahoma, 173 Pac. 1044, the court stated as follows:

"The law in force at the date of the allotment controls as to when the title vests in the heirs."

In the case of McKee v. Henry, 201 Fed. 74, the court stated as follows:

"No law or agreement to divide the lands in severalty had any effect to create such a title until the lands were actually allotted."

In support of the theory of the defendants in error, they introduced certain evidence over the objection of plaintiffs in error, an exhibit which was certified to as a part of the allotment record of Mack McNally, which is as follows:

"51

"Department of Interior,

"Commission to Five Civilized Tribes,"

(Then appears a map of a congressional township, in which the land in question is identified by a mark surrounding the same and on the face of this plat appears the following:)

"Reserved March 16, 1901, pending ratification of Creek Agreement."

(On the bottom of the plat are these words):

"Mack McNally, Deceased."

This exhibit was certified to by the Superintendent of the Five Civilized Tribes, as a true and correct copy of reservation plat and memorandum slip on file in the allotment record of Mack McNally.

Defendants in error then produced a witness, Mr. Hastain, who testified in substance that, beginning April, 1899, and for three years, he was clerk of the Dawes Commission, and testified as follows:

"Q. Mr. Hastain, I will ask you if it was customary, if in fact it was done, to list the names of deceased persons after March 1, 1901, to be enrolled that were represented or purported to be living on April 1, 1899? A. We did. Q. At the same time was it permitted and allowed by the officials in the Dawes Commission, the heirs or the personal representatives of the deceased to make a selection of land for the allotment of the deceased? A. It was. Q. And was that land so selected reserved? A. It was where requested. Q. Now, reserved for what? A. It was reserved for him as an allotment. Q. Mr. Hastain, I want to exhibit to you defendants' Exhibit No. 1 and ask if that was the method of procedure for selecting and reserving land for a deceased person prior to the adoption or ratification of the Original Agreement? A. It was."

He then testified that the exhibit disclosed that on the 16th day of March, 1901, some one had appeared at the office and the Commissioner made the record as set forth. In testifying in regard to the exhibits introduced by the plaintiffs in error, which were the "original memorandum of selection" and the certificate of allotment, he stated those exhibits were based upon an application having been made for an allotment. He also testified that where an application was made prior to May 25, 1901, and was not inconsistent with the Original Creek Agreement, thereafter they proceeded to allot the same as if filed on afterwards. And it is upon this evidence that the defendants in error rested their case, and to take this allotment out of the category of allotments controlled by the decision of Brady v. Sizemore.

The defendants in error, in support of their case, cite Woodward v. deGraffenreid, 59 Law Ed. 1310, and quote from the opinion the following language:

"We construe section 6 to mean that allotments theretofore made, if not inconsistent with the provisions of the Agreement, were to be treated the same as if made after the ratification of the Agreement; and this includes the designation of the beneficiaries in case of the death of the allottee."

The court further stated:

"That which had been tentative and provisional then became, by force of the provisions of the Agreement, final and conclusive. The result was to vest a complete, equitable title in her 'heirs,' to be determined according to the Creek laws of descent and distribution."

But counsel have overlooked the fact that in the case of Woodward v. deGraffenreid the court stated that it was agreed that Agnes Hawes was a citizen of the Creek Nation; that she died June 29, 1900, having previously made selection of the tract in question as her allotment of land in that nation before the Commission to the Five Civilized Tribes and received from the Commission a certificate of allotment therefor. The court held that she having made her selection and received her certificate of allotment, prior to her death, as provided in section 11 of the Curtis Act, said allotment came within the category of allotments designated in section 6 of the Original Creek Agreement. If Mack McNally had made a selection and received his allotment certificate prior to his death, this would be a parallel case, but such are not the facts.

Counsel then cite the case of Hooks, v. Kennard, 28 Okla. 457. 114 Pac. 744, and they quote the following language from that opinion:

"That the selection of, and the filing upon an allotment of land was the inception and beginning of the title of the allottee or his heirs, and that, when the patent, which is only the evidence of title, is issued it relates back to the inception of the title."

This quotation of the court is taken from the case of de Graffenreid v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624; Godfrey v. Iowa Land & Trust Co., 21 Okla. 293, 95 Pac. 792; Irving. v. Diamond, 23 Okla. 325, 100 Pac. 557. But looking to the case of de-Graffenreid v. Iowa Land & Trust Co., it will be found that the allottee on April 22, 1899, selected her allotment and received a certificate of allotment, and died June 7, 1902, which was after the passage of the Original Creek Agreement and prior to the time the Supplemental Creek Treaty became effective, so in that case the allottee had made her selection of allotment and received a certificate as provided in the Curtis Act. But looking to the facts in the case of Hooks v. Kennard, supra, the court stated the facts as follows: "The lands were set apart and allotted in the name of the deceased Creek citizen prior to the approval and ratification of the Supplemental Creek Agreement made by the Creek Nation." The court further stated that the allotments were made under section 28, Original Creek Treaty, so the facts in that case are different from the facts

in the case at bar, and do not support the contention made by defendants in error. Defendants in error then cite the case of Barnett v. Way, 29 Okla. 780, 119 Pac. 418, but the facts in that case disclose that the allottee had been allotted the land in question under section 11 of the Curtis Act, and had received the certificate of allotment therefor, and died prior to the ratification of the Original Creek Treaty. The court held that the allotment was thereafter ratified by section 6 of the Original Creek Treaty.

A similar question to that presented by defendants in error we do not believe has been passed upon by this court. The court has in numerous cases stated that the title was vested at the date said allotments were segregated and allotted. We know of no case where the lands were allotted under section 11 of the Curtis Act, or under section 28 of the Original Creek Treaty, where the court has ever held that the title vested as of the date of the application made for the allotment, and counsel have not cited us any case, but the cases all state that title vests at the time of the selection and allotment. The court has used the term "selection", and that the "allotment was segregated", still there is no case where they ever held the descent was cast prior to date of the certificate of allotment, and a reading of all the opinions discloses that is the date the lands are referred to as being allotted.

In the case at bar, the plaintiffs introduced in evidence what purported to be the "original memorandum of selection" signed by the Chairman of the Dawes Commission, and the original certificate of allotment, and they contend that this is the date when the land was allotted. To overcome this, the defendants in error introduce the unsigned plat with the words endorsed upon the case "reserved March 16, 1901, pending ratification of Creek Agreement." Now, if this is to overcome the instruments which are designated as the "original memorandum of selection" and the "certificate of allotment," there should be some authority for such a record to be made. No authority existed under section 11 of the Curtis Act for making such a reservation, or such a record; then if there was no authority for such a record, or such a procedure, certainly no vested right accrued thereby. While it is true, the witness Hastain testified that the Dawes Commission permitted this practice, but a practice permitted without authority, and done at a time that the heirs were not entitled to an allotment of land, and no provision made for allotting land to the deceased, or his heirs.

That this memorandum slip or reservation plat was not considered as a selection, must be self-evident, for the reason that thereafter the Dawes Commission signed what purported to be the "original memorandum of selection," and that is dated October 20, 1902, and on the same day issued the certificate of allotment, and until that was done no one acquired even the right of possession to this allotment, much less a vested interest in and to this allotment. It therefore follows the land in question was not lawfully segregated or allotted until October 20, 1902, and the law in force at that time will control.

It therefore follows that descent was cast on said date, to wit, October 20, 1902, the date of the "original memorandum of selection," and the date of the "certificate of allotment," and under the agreed statement of facts plaintiffs in error would inherit said allotment. For the reason stated, the judgment is reversed and cause remanded.

OWEN, C. J., and SHARP, KANE, HARRISON, PITCHFORD, and JOHNSON, JJ., concur.