NED et al. v. COUNTISS et al.

No. 11410—Opinion Filed June 21, 1921.

Rehearing Denied Jan. 10. 1922.

(Syllabus.)

**1. Indians—Descent of Allotments.**

By the provisions of section 22 of the Supplemental Choctaw-Chickasaw Agreement, approved by act of Congress July 1. 1902 (32 Stat. at L. 641), where a Choctaw Indian died subsequent to the ratification of said agreement, and before receiving his allotment of land, the lands to which such person would have been entitled if living,

were allotted in his name, and descended to his heirs according to the laws of descent and distribution as provided in chapter 49 of Mansfield's Digest of the Statutes of Arkansas.

**2. Same—Law Governing.**

The law of descent in force at the date of the certificate of allotment to a member of the Choctaw Tribe of Indians, is the governing law, and this law relates back to the death of the Indian entitled to take the allotment, and identifies the heirs as of that date, and such law should be applied as if the deceased had received title to his allotment and died seized thereof.

**3. Same—Nature of Estate.**

The lands allotted in the name of a duly enrolled Mississippi Choctaw Indian, who died in August, 1903, intestate, and without issue, before receiving her allotment, must be considered as an ancestral estate, within the meaning of section 2531, Mansfield's Digest of the Statutes of Arkansas, extended over and put in force in the Indian Territory by act of Congress.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by Willie Ned and others against H. D. Countiss and D. A. Cathey to recover land. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Hatchett & Semple and R. C. Drake, for plaintiffs in error.

Moore & West, for defendants in error.

NICHOLSON, J. This suit was instituted in the district court of Jefferson county, by the plaintiffs in error, as plaintiffs below, against the defendants in error, defendants below, for the recovery of an undivided one-half of certain lands situate in Jefferson county, and being the allotment of Linnie Reed, deceased, who was a duly enrolled member of the Choctaw Tribe of Indians, enrolled as a Mississippi Choctaw. The plaintiffs allege in the third paragraph of their petition:

"* * * That they acquired title to said land by inheritance, in the following manner, to wit: Said Linnie Reed died in 1904, intestate, unmarried and without issue, leaving no father nor mother nor brothers nor sisters; that the father of said Linnie Reed was Kit Reed, and these plaintiffs inherited as heirs on the paternal side, an undivided one-fourth, respectively, of the one-half interest which passed to the paternal line: that these plaintiffs are related to Kit Reed in that they are brothers and sisters, respectively, of the said Kit Reed, and the sole heirs on the paternal side"

—and, further, that they are full-blood Indians duly enrolled as such upon the ap-proved rolls of the Choctaw Tribe of Indians as Mississippi Choctaws; that they never conveyed their one-half interest in said land and are the owners of the same, and pray judgment for possession thereof, and quieting their title thereto.

The defendants answered, pleading title in themselves by virtue of conveyances from Victoria Gardner, nee Reed, and Sillie Hawkins, who they allege were the sole heirs at law of Kit Reed, deceased, and Linnie Reed, deceased; and, further, pleaded a decree of the district court of Johnston county, in a case entitled, Victoria Gardner, nee Reed, Sillie Hawkins, minor, by her guardian, R. E. Gardner, and Sam Stout, plaintiffs, against Willie Ned, Annie Postoak, nee Ned, Sarah Johnston, nee Lewis, and Moseley Lewis, defendants, which was a cause appealed from the county court of Johnston county, from a decree determining heirship as to certain real and personal estate of Kit Reed, deceased, and by which the district court decreed Victoria Gardner, nee Reed, and Sam Stout, surviving husband of Sillie Hawkins, deceased, as the sole heirs at law of Kit Reed, deceased. To this answer, reply, consisting of a general denial, was filed. On the trial, the following agreed statement of facts was filed and submitted:

"It is hereby agreed by and between Willie Ned, Annie Postoak, Sarah Johnston, and Moseley Lewis, by their attorneys of record, Hatchett & Semple, and H. D. Countiss and D. A. Cathey, defendants, by their attorneys of record, Moore & West, that said cause may be tried upon the following stipulation of fact, to wit:

"Ist. That Linnie Reed was a full-blood Mississippi Choctaw, enrolled opposite No. 1366, and was the daughter of Kit Reed, a full-blood Mississippi Choctaw, enrolled opposite No. 1037, and Victoria Reed, a full-blood Mississippi Choctaw, enrolled opposite No..........; that Linnie Reed died August 8, 1903, near what is now Durwood, Marshall county, Oklahoma, leaving her father, Kit Reed, and her mother, Victoria Reed, and a maternal half sister, Sillie Hawkins.

"2nd. That Kit Reed died April 24th, 1904, near Durwood, Oklahoma; that at the time of the death of said Kit Reed, that he and Victoria Reed were living and cohabiting together as man and wife, and that the said Victoria Reed was then pregnant by Kit Reed and that there was born a posthumous child, October 13, 1904; said child lived about six hours.

"3rd. That at the time of the death of Linnie Reed and also Kit Reed the said Linnie Reed was survived by a half sister, Sillie Hawkins, the daughter of her mother, Victoria Reed, by a former husband named Henry Hawkins; that Sillie Hawkins died September 28th, 1912.

"4th. That proof of continuous residence of Linnie Reed was furnished May 25, 1906, and approved August 4, 1906, and the land in controversy was allotted to Linnie Reed by patents approved April 16, 1909, and April 24, 1909.

"5th. That the defendants are the owners of, by purchase from Victoria Reed and Sillie Hawkins of whatever interest they had or might have acquired as heirs of the said Linnie Reed, which plaintiffs concede to be a one-half interest.

"6th. That the plaintiffs are brothers and sisters of Kit Reed and were and are the only brothers and sisters living at the time of his death, and are enrolled as Mississippi Choctaws of the full-blood.

"7th. Either party may offer such record evidence as may be desired subject to objections as to competency, relevance and materiality."

The court found generally for the defendants, and rendered judgment quieting the title in said defendant D. A. Cathey.

The plaintiffs in error present two propositions of law: First. Does the law in force at the date of the selection of the allotment, or the law in force at the date of the issuance of the patent, govern as to the descent of the land of a member of the Choctaw Tribe of Indians? And second. Is the allotment of a Mississippi Choctaw who died prior to statehood, without issue, and whose selection was made prior to statehood, a new acquisition, or an ancestral estate?

It appears from the agreed statement of facts that Linnie Reed was a full-blood Mississippi Choctaw Indian duly enrolled; that she died on August 8, 1903, leaving surviving her Kit Reed, her father, Victoria Reed, her mother, and Sillie Hawkins, a maternal half sister. It appears from the record that Linnie Reed was duly identified as a Mississippi Choctaw by the Commission to the Five Civilized Tribes on July 8, 1903; that on August 4, 1906, the Commissioner to the Five Civilized Tribes made an order and finding that satisfactory proof of her removal and settlement had been made, and that she was entitled to enrollment as a Mississippi Choctaw, under the provisions of section 43 of the act of Congress approved July 1, 1902 (32 Stat. at L. 651), and section 21 of the act of Congress approved April 26, 1906 (34 Stat. at L. 137), and it further appeared that allotment certificates were issued on September 20, 1906, and patents issued in April, 1909.

By section 22 of the Supplemental Choctaw and Chickasaw Treaty, approved by act of Congress July 1, 1902 (32 Stat. at L. 641), it is provided:

"If any person whose name appears upon the rolls, prepared as herein provided, shall have died subsequent to the ratification of this agreement and before receiving his allotment of land, the lands to which such person would have been entitled if living shall be allotted in his name, and shall, together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas: Provided, that the allotment thus to be made shall be selected by a duly appointed administrator or executor. If, however, such administrator or executor be not duly and expeditiously appointed, or fails to act promptly when appointed, or for any other cause such selection be not so made within a reasonable and practicable time, the Commission of the Five Civilized Tribes shall designate the lands thus to be allotted."

And by section 41 of the same treaty, it is provided that all persons duly identified by the Commission to the Five Civilized Tribes, under the provisions of section 21 of the act of Congress approved July 28, 1898 (30 Stat. L. 4951), as Mississippi Choctaws, may make bona fide settlement within the Choctaw-Chickasaw country, and upon proof of such settlement shall be enrolled by such commission as Mississippi Choctaws, entitled to allotment as in said act provided for citizens of the tribe, subject to the special provisions therein provided as to Mississippi Choctaws.

By section 21 of the act of Congress of April 26, 1906 (34 Stat. at L. 137), the following provision was made for filing proof of continuous residence by heirs of deceased Mississippi Choctaws:

"That heirs of deceased Mississippi Choctaws who died before making proof of removal to and settlement in the Choctaw country and within the period prescribed by law for making such proof may within sixty days from the passage of this act appear before the Commissioner to the Five Civilized Tribes and make such proof as would be required if made by such deceased Mississippi Choctaws; and the decision of the Commissioner to the Five Civilized Tribes shall be final therein, and no appeal therefrom shall be allowed."

By section 22 of the Supplemental Choctaw and Chickasaw Treaty, supra, it is provided that if any person whose name appears upon the rolls prepared as in said act provided shall have died subsequent to

the ratification of said agreement, and before receiving his allotment of land, the lands to which such person would have been entitled if living shall be allotted in his name and shall, together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter 49, Mansfield's Digest of the Statutes of Arkansas.

It is agreed that the name of Linnie Reed appears upon the rolls as provided in said act, and that the land in controversy was allotted in her name.

It has been consistently held by this court that the selection of and filing upon an allotment of land was the inception of title of the allottee or his heirs, and that when the patent, which is only the evidence of title, is issued, it reverts back to the inception of the title. DeGraffenried v. Iowa Land & Title Company, 20 Okla. 687, 95 Pac. 624; Godfrey v. Iowa Land & Title Company, 21 Okla. 293, 95 Pac. 792; Irving et al. v. Diamond, 23 Okla. 325, 100 Pac. 557; Hooks v. Kennard, 28 Okla. 457, 114 Pac. 744. And the law of descent in force at the date the allotment takes effect, governs, and this law relates back to the death of the Indian entitled to take the allotment and identifies such heirs as of that date, and such law should be applied as if the deceased had received title to his allotment and died seized thereof. Brady v. Sizemore et al., 33 Okla. 169, 124 Pac. 615; Shellenbarger v. Fewel, 34 Okla. 79, 124 Pac. 617; McKee v. Henley, 201 Fed. 74; Bruner v. Nordmeyer, 64 Okla. 163, 166 Pac. 126; Hamilton v. Bahnsen, 75 Okla. 216, 183 Pac. 413.

From the foregoing authorities, it must be held that the law in force at the date of the selection of the allotment, and not the law in force at the date of the patent, governs as to the descent of the land of a member of the Choctaw Tribe of Indians.

Passing to the second proposition presented, we have been cited to no authority holding, or even indicating, that the land allotted to a Mississippi Choctaw who died prior to statehood, without issue, and whose selection was made prior to statehood, was a new acquisition, and we can think of no reason why it should be so held. It is true that there were conditions imposed upon the Mississippi Choctaws by the Supplemental Treaty not imposed upon the native Choctaws, among which were the continuous

bona fide residence within the Indian Territory for three years, due proof of such residence, and a forfeiture of all rights for a failure to make proof of such residence within four years, but when these conditions had been complied with, the Mississippi Choctaw was placed on an equality with, and was entitled to the same privileges, accorded the same rights and governed by the same laws, as the native Choctaw. There can be no doubt of the ancestors or the Indian blood of the Mississippi Choctaws. They came from the country originally occupied by the ancestors of the native Choctaws, and are of the same tribal blood.

The first legislation looking to the removal of the Choctaws from Mississippi to the territory which is now embraced within the state of Oklahoma was the treaty of October 18, 1820 (7 Stat. at L. 210). By this treaty the Choctaws were given lands in the Indian Territory in exchange for their lands in Mississippi, and on September 27, 1830 (7 Stat. at L. 333), the second treaty was ratified between the United States and the Choctaws, carrying out the terms of the original treaty, exchanging their lands in Mississippi for lands in the Indian Territory, and in 1835 the migration from Mississippi to the Indian Territory was commenced, and was continued for a number of years, and in fact Mississippi Indians were permitted to acquire homes in the Indian Territory as members of the Choctaw Tribe of Indians until 1902. In order to hasten the removal to this country of those who had remained in Mississippi, and to provide homes for those who desired to remove to the Indian Territory, the Supplemental Treaty with the Choctaws and Chickasaws, hereinbefore referred to, contained the conditions above mentioned, and those Choctaws who removed to the Indian Territory after the ratification of such treaty were designated Mississippi Choctaws.

It cannot be said that the land allotted to Linnie Reed was a mere gift. She acquired her rights thereto because of the blood of her tribal parents. The land allotted to her cannot be termed a new acquisition by her, but should be termed as an inheritance from her parents as members of the tribe. Shulthis v. McDougal, 170 Fed. 529; Pigeon v. Buck, 38 Okla. 101, 131 Pac. 1083, 237 U. S. 386, 59 L. Ed. 1007; McDougal v. McKay, 43 Okla. 261, 142 Pac. 987, 237 U. S. 372, 59 L. Ed. 1001; Thorne v. Cone et al., 47 Okla. 781, 150 Pac. 701; Whitener v. Moss, 71 Oklahoma, 175 Pac. 223; Daily v. Benn, 81 Okla. 285, 198 Pac.

323. And the estate being ancestral, upon her death one-half of said estate ascended to her father and one-half to her mother. Upon the death of her father, Kit Reed, his estate descended to his posthumous child, and upon the death of said child the estate that came to it by its father ascended to the heirs of the father. Section 2531, Mansfield's Statutes of Arkansas; Thorne v. Cone et al., supra; Finley v. American Trust Co. et al., 51 Okla. 489, 151 Pac. 865; Kelley v. McGuire, 15 Ark. 555. And as plaintiffs are the heirs of the father, the title to one-half of the land involved passed to them.

The defendants contend that the determination of heirship had in Johnston county on January 30, 1914, upon the estate of Kit Reed should be res adjudicata as to the lands in question, inasmuch as the plaintiffs claim that the interest they are contending for came through the blood of Kit Reed. It does not appear that any evidence of a judgment of the Johnston county court determining heirship was introduced, and no mention thereof was made in the agreed statement of facts. The defendants pleaded a judgment of the district court of Johnston county, determining the heirs of Kit Reed, deceased, but made no effort to introduce such judgment in evidence. Therefore it is unnecessary to pass upon the validity or effect of this judgment.

The judgment of the trial court is reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

HARRISON, C. J., and PITCHFORD, McNEILL, and ELTING, JJ., concur.