### KING et al. v. ROGERS.

No. 17256—Opinion Filed Dec. 7, 1926.

Rehearing Denied Feb. 15, 1927.

**1. Judgment — Res Judicata — Property Right of Indian.**

A judgment determining the right of an Indian to property at issue and unappealed from is res judicata in a subsequent action between the same parties on the same issues.

**2. Same—Not Affected by Subsequent Contrary Decision by Supreme Court.**

The judgment of the trial court rendered in conformity to the holding of the Supreme Court in similar cases at that time on the question determined and not appealed from is not abrogated by a subsequent holding of the Supreme Court to the contrary in case on appeal, to permit a new action in that case which was not appealed and a retrial of the issues determined by said judgment.

**3. Same—Insufficiency of Petition for Recovery of Land.**

The record examined, and held, the demurrer to the petition was properly sustained.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court Hughes County; Geo. C. Crump, Judge.

Action by Simondy King and Louis King against H. H. Rogers to recover real estate and remove cloud, and for damages. Judgment for defendant, and plaintiffs appeal. Affirmed.

J. B. Campbell and Pryor. Stokes & Carver, for plaintiffs in error.

John Rogers, for defendant in error.

Opinion by THREADGILL, C. The action in this case was to recover an undivided one-half interest in and to the S. W. ¼ of section 16, T. 1 N., R. 11 E., in Hughes county, to set aside a judgment of October 3, 1923, as a cloud on the title, and for damages. The undisputed facts are substantially as follows: Plaintiffs are full-blood Creek Indians. Simondy King is the widow and Louis King is the son and only surviving heir of Amos King, who died in the month of November, 1915. Said Amos King had one other son, named Maxey, who died in August, 1921, intestate, unmarried and without issue. Said Amos King was the uncle of Mollie Lackey, who died in the year 1900, leaving her surviving her husband, Thomas Lackey, who died in the month of March, 1901. Said Mollie and Thomas were the mother and father of Jimmie Lackey, the allottee of the above described land, who died in the month of February, 1900, intestate, unmarried, and without issue, and left him surviving his said mother and father as his only heirs. At the time said Thomas Lackey died he had two sons. Waitie Thomas and John Thomas by a different mother from said Mollie, named Cinda, and she died prior to her said husband, Thomas Lackey. Said Waitie and John were the only heirs surviving said Thomas Lackey. The said named were all full-blood Creek Indians, duly enrolled as such on the approved rolls of the Creek Nation or tribe of Indians. The defendant is the grantee of said Waitie Thomas and John Thomas. On June 27, 1907, the Commission to the Five Civilized Tribes made an arbitrary selection of the 160 acres of land above described as the share of the tribal lands said Jimmie Lackey was entitled to, pursuant to the treaty agreements and allotment acts of Congress, and on March 27, 1908, being nine months, the contest period from date of the selection, approved said selection as the allotted lands of said Jimmie Lackey. It is understood that the first record—the arbitrary selection record—is commonly understood and designated as the certificate of selection. and the second record, after the period of contest, the certificate of allotment. The lands were thereafter patented to the heirs of Jimmie Lackey, deceased. In 1923, plaintiffs brought suit against one Vernon V. Harris for an undivided one-half interest in this land, claiming that they were the maternal heirs. and Harry H. Rogers was substituted for said Harris, upon his disclaimer, and the said action proceeded to judgment in favor of said defendant Rogers. The case was numbered 4060. Plaintiffs pleaded the facts of heirship and arbitrary selection and allotment as above stated, and

contended that they were entitled to the maternal half of the land, under the law of descent and distribution of the state of Arkansas, as the title was cast on June 27, 1907, being the date of the certificate of selection, and before Indian Territory and Oklahoma became a state, and defendant answered and contended that he was entitled to all of said land as the grantee of the surviving sons of the allottee's father, by a different mother, being the next of kin under the Oklahoma law. All the facts being agreed upon, the court settled the question of law as to when the title was cast in favor of defendant.

The court held that the title was not cast until the certificate of allotment was issued on March 27, 1908, and rendered judgment according'y. This judgment was never appealed from and became final. Thereafter, on October 7, 1925, the same plaintiffs bring this action, No. 5334, in the same court against the same defendant, as in case No. 4060, and for the same undivided one-half interest, upon the same state of facts, and contend that they are entitled to said interest and that the judgment in that case is void as depriving full-blood Indian heirs of title to inherited land contrary to the Act of Congress of May 27, 1908, which provided, in substance, that title of full-blood Indian heirs to full-blood inherited land can only be effected by execution of deeds under the approval of the county court having jurisdiction of the estate.

The defendant demurred to the petition on the ground same did not state facts sufficient to constitute a cause of action. The court sustained the demurrer and dismissed the petition and plaintiffs have appealed, and say this was error and the judgment should be reversed.

In general, the question to be determined by the appeal is whether or not the court committed error in sustaining the demurrer to the petition, and the principal question decisive of this one is whether or not the judgment in case No. 4060 is res judicata of the rights of the parties in this action. There was no issue of fact in that case, as there is none in this. The facts are undisputed. The law is also undisputed except on the point as to when the title to the land was cast, whether on the date of the arbitrary selection, June 27, 1907, before statehood, or March 27, 1908, after statehood. The plaintiffs submitted this point squarely to the court in bringing the action, and defendant joined issue on it by his answer and both parties relied upon this point to fix their respective rights to the land, and the court decided the point in favor of the defendant, from which there was no appeal taken. If this was a question the court had authority to determine, it needs no citation of authority to say its determination is conclusive. As a general rule, if the plaintiffs had appealed in that case and urged as error that the decision was contrary to law. this court could have inquired into the merits of the error alleged and corrected it, if error was shown, but failing to appeal, the right to urge error in deciding the point of law is waived, and only the question of jurisdiction and authority to determine the point or question that was determined can be urged at this time. When defendant demurred to plaintiffs' petition, these questions were raised. It was necessary for the judicial mind to determine whether or not the point at issue had been decided by the judgment pleaded in the petition as a cloud on plaintiffs' title to be removed, and, if the point had been decided, then to determine whether or not the court had jurisdiction and authority to render the decision. It is not disputed that the point was decided by the court, but plaintiffs say that it was not decided right because, being full-blood Indian heirs, they were deprived of title by it contrary to federal law. If this contention is consistent with the purpose of the litigation and authority of the court to pass on the issue presented, then it occurs to us that if the decision had been in favor of plaintiffs, defendant could have appealed to this court and offered the same complaint, since his grantors were full-blood Indian heirs, and could have urged that a half-interest in the land was taken from them contrary to federal law.

We think the question of the court's jurisdiction to decide the point at issue in this case, as well as the question of res judicata, involved here, have been before this court and decided adversely to plaintiffs' contention. In the case of Fulsom v. Mason et al., 107 Okla. 70, 229 Pac. 1072, where Fulsom, an Indian, sued for an interest in certain lands on the ground that he was the son of the allottee and the issue as to whether he was such son being decided by the court against him, in a former suit, was held as res judicata of his rights in the subsequent action. The court said:

"The alleged rights of Indian citizens and their property arising by virtue of the allotment acts touching the Five Civilized Tribes are subject to the same rules of adjudication as other citizens of Oklahoma, in

all particulars drawn in question and in issue here."

See, also, Berry et al. v. Winstock et al., 102 Okla. 189, 228 Pac. 948. In the case of Schwacbacher et al. v. Jennings et al., 118 Okla. 51, 246 Pac. 588, this court held, that a judgment against minors in a suit by the guardian to set aside certain sales proceedings in the county court was res judicata of their rights in a subsequent action for the same purpose, even where the record showed sufficient fraud to entitle them to the remedy prayed for, but for the former judgment. It was also held in this case that the court had authority to render the particular judgment that was rendered, although the result deprived the minors of title to the land in controversy.

Plaintiffs contend that the effect of the judgment in No. 4060, as well as the judgment in the instant case, had the effect of divesting them of their title by court decree, which they say cannot be done. They cite Bell v. Fitzpatrick, 53 Okla. 579, 157 Pac. 334, to support their contention. The question decided in that case was that the district court had no authority to confer majority rights upon an Indian minor and thereby contravene the congressional restrictions on his allotted lands. It was also held that a suit, brought by such Indian after he became of age, to cancel a deed conveying his allotted lands after the order made conferring such rights upon him, and a deed was executed after May 27, 1908, and thereafter compromised and dismissed with prejudice, was not a bar to another action to cancel said deed. We cannot see how this is applicable to the case at bar. In the first place, the order of the district court conferring majority rights upon the Indian minor could not affect his status under the restriction acts of Congress, and the said judgment, in its application to remove the federal bar to convey his rights, was an infringement of the federal law, and such judgment, as a defense to a suit by the Indian to cancel the conveyance, was void, and this court held it to be void for the reason the said lands under the federal law could not be conveyed by the minor himself until he reached his majority or by guardian before that time, under the supervision of the county court. But the judgment pleaded as a bar in the instant case does not infringe any federal statute. Congress had not declared when the title of allotted lands was cast, whether at the date of the selection or the date of the certificate of allotment. It was necessary for some court of competent jurisdiction to determine this question. At the time the judgment was rendered, this court had determined this question in favor of the certificate of allotment. McDonald et al. v. Ralston et al., 65 Okla. 277, 166 Pac. 405; Hamilton et al. v. Bahnsen et al., 75 Okla. 216, 183 Pac. 413; Ned et al. v. Countiss et al., 84 Okla. 138, 203 Pac. 168; and the judgment in No. 4060 followed these decisions. Since these decisions were rendered, in two recent cases this court has reversed its former holding and now holds in favor of the certificate of selection. Miller v. Bilby, 110 Okla. 241, 237 Pac. 859; Bruner v. Wolf, 110 Okla. 257, 237 Pac. 864. But does this change of the rule render void the judgment, in the former cases, as well as the judgment in controversy, and open the door for relitigation of the issues in those cases? We think not. If this were the case, then it would be possible for a litigant defeated by a former judgment, according to the holdings of this court at the time the judgment was rendered, to bring a new action and have a new hearing every time this court reverses itself or makes a ruling contrary to a former one. We know of no authority and none has been called to our attention, that justifies this procedure.

Plaintiffs further contend that the test, in each case, as to whether or not judgment is void, is: "Does the error appear on the face of the judgment roll? If so, the full-blood is not barred; if it does not so show, the full-blood is barred." They cite the case of Miller v. Madigan, 90 Okla. 17, 215 Pac. 742, on support of this proposition. This case is not applicable here for the reason the question involved was the validity of a deed executed by full-blood Indian heirs of deceased Indian allottee without the approval of the county court as provided by Act of Congress of May 27, 1908, and the face of the record showed that the judgment infringed this congressional act, and, for this reason, was void upon its face. A very different question is presented in the case at bar. The issue here was not decided by any act of Congress, and the judgment, deciding the point at issue, did not infringe any act of Congress applicable to the Indian, but was in aid of the act of Congress pointing out the heirs of the deceased allottee, in whom the title of the land vested at the time the sale was transferred from the Indian tribe to the individuals entitled thereto, and it followed the decisions of this court in force at that time in deciding when the title to the land was cast, and because this court has seen fit to change its holdings since that time, does not abrogate that

judgment, even if the parties are full-blood Indians, to try again the issue settled by that judgment.

The judgment of the trial court is, therefore, affirmed.

By the Court: It is so ordered.

Note.—See under (1) 34 C. J. p. 902, §1312; p. 938, §1343. (2) 34 C. J. p. 901, §1311. (3) 4 C. J. p. 1129, §3122.