## FIRST NAT. BANK OF DECATUR, NEB., v. UNITED STATES.

### No. 9385.

Circuit Court of Appeals, Eighth Circuit.

June 3, 1932.

Frank S. Howell, of Omaha, Neb. (Howell, Tunison & Joyner, of Omaha, Neb., on the brief), for appellant.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., of Omaha, Neb., Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., and Edson Smith, and Lawrence I. Shaw, Asst. U. S. Attys., both of Omaha, Neb., on the brief), for the United States.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

This is a suit in equity brought by the United States as trustee and guardian for the Omaha Tribe of Indians against the appellant, to quiet title to certain lands as against the claims of the defendant, and to enjoin defendant and those claiming under it from entering upon or taking possession of said lands. The parties will be referred to as they were designated in the lower court.

Prior to 1854, the Omaha Indians held the Indian title to that part of eastern Nebraska lying north of the Platte river. This Indian title to land as recognized in the United States was a right of possession and occupancy; the fee being in the general government. This right of possession and occupancy has been universally recognized in this country as sacred and as something which could not be taken away from the Indians without their consent, and then only upon such consideration as might be agreed upon. In accordance with this recognized principle, a treaty was entered into with these Indians under date May 16, 1854, by which they ceded the above-mentioned lands to the United States, except a certain area to be retained for a reservation. The reservation was later delineated pursuant to the terms

of the treaty; the Missouri river, being fixed as its eastern boundary. In 1867, the government caused the reservation to be surveyed, subdivided, and platted into forty-acre tracts and fractional lots, and this survey and the plat based thereon fixed and established the Missouri river as the eastern boundary of the reservation. The river, as shown by the plat, was approximately a mile east of the southwest quarter of the northwest quarter and the east half of the southwest quarter of section 33, township 25 north, range 10, east of the sixth p. m., which are the lands confessedly owned by the defendant. The lands bordering on the river were surveyed into irregular lots or tracts.

By Act of Congress approved August 7, 1882 (22 Stat. 341), provision was made for the allotment of certain lands in this reservation, including all of section 33 and the lands lying east thereof to the river. The plat showed the lands in which the defendant has acquired some title to be so remote from the river that full quarter sections of land intervened between them and the river.

The selection of and the filing upon the allotments of land in controversy in this suit by individual Indians took place in 1900, about thirty-three years after the official survey and the plat of these lands had been made and filed. These allotments were made by reference to the plat which then correctly showed the land and the number of acres which were stated to be within the descriptions. The act provided that patents to the allottees should be issued by the Secretary of the Interior and should provide that the United States would hold the allotted lands for a period of twenty-five years in trust, for the sole use and benefit of the allottees. Subsequent legislation extended the trust period, and as to lands not thus allotted provided that a patent should issue to the Omaha Tribe of Indians; the United States to hold the land thus patented in trust for the Indians for a period of twenty-five years.

The lower court found that subsequent to the 1867 survey, the Missouri river and the main channel thereof moved toward the west by process of erosion, gradually cutting away the soil and lands until in the year 1889 or 1890 it had reached and cut away a large part of the southwest quarter of the northwest quarter and the east half of the southwest quarter of section 33, township 25 north, range 10, east of the sixth p. m., the lands now owned by the defendant, so that these two tracts of land bordered in part on the Missouri river, and all the soil and land be-

tween these lands and the west bank of the Missouri river, as shown at the time of the 1867 survey, were cut out and washed away. Thereafter, however, and prior to 1896, the river receded toward the east, leaving all of the land owned by defendant and a considerable area of land between section 33 and the west river bank. The movement of the river toward the east was slow and imperceptible, and apparently left the land topographically in about the same condition as shown by the 1867 survey thereof. In 1916 and 1919, the Secretary of the Interior issued fee patents to the respective allottees, and defendant later by mesne conveyances became the owner of an undivided six-sevenths of the land so allotted and patented. The court found that: "In the granting of the allotments aforesaid to individual members of the Omaha Tribe of Indians, the said allotments were made according to the said plat of 1867, and every trust patent and the fee patents thereafter issued respectively contained a description of the land allotted according to the subdivisions thereof so platted, and recited the number of acres so allotted according to the acreage disclosed in said survey."

Title of the defendant to the lands described in the conveyances to it is not questioned by the government, but defendant claims title to all the land now intervening between the land which it acquired by these conveyances and the west bank of the Missouri river, as at present located, on the ground that, when the river moved westward and encroached upon the land which defendant now owns, these lands thereby became riparian, and that when the river again receded, leaving a considerable area of land between section 33 and the west river bank, these intervening lands became attached to its lands as accretions thereto, on the theory that land "once riparian, always riparian." In support of its contention, defendant relies largely upon the decisions of the state of Nebraska.

The lower court held that the rights and title of the Indians in and to their respective allotments were not to be adjudged according to the laws of Nebraska, but that these allotments were made as a compliance with the provisions of the Treaty of 1854 (10 Stat. 1043), and pursuant to Acts of Congress (Act Aug. 7, 1882, 22 Stat. 341; Act March 3, 1893, 27 Stat. 612, 630), and that such rights could not be impaired by state legislation nor by decisions of the courts of the state where the lands were located. It was accordingly held that the defendant had no right or title

to the lands, other than as disclosed in the patent to its grantors, and predecessors in interest.

■ As we view the controlling issues, it is not necessary to consider the decisions of the Supreme Court of Nebraska which are urged by defendant as supporting its claim to the land in controversy. Title to the land which defendant confessedly owns was initiated when the individual Indian made selection of and filed upon his allotment of land. That was the inception of the title of the Indian allottee, and when the patent was issued it related back to the inception of the title and no further. Hooks v. Kennard, 28 Okl. 457, 114 P. 744; Ned v. Countiss, 84 Okl. 138, 203 P. 168; De Graffenreid v. Iowa Land & Trust Co., 20 Okl. 687, 95 P. 624; Godfrey v. Iowa Land & Trust Co., 21 Okl. 293, 95 P. 792; Irving v. Diamond, 23 Okl. 325, 100 P. 557.

■ At that time the lands selected, filed upon, and later patented to the allottee were not riparian lands, and they have never been riparian lands since the time of their selection by the allottee. What the character of these lands may have been, whether riparian or otherwise, prior to their selection and original entry by the allottees, is a closed book and cannot be inquired into. If this were not the rule owners might be divested of their property, and titles might be challenged and clouded by proof of geological and topographical changes and formations reaching back to antediluvian periods or prehistoric times. What may have transpired to affect these lands while title thereto remained in the government, and before their selection or entry by the individual Indians, defendant's grantors and predecessors in interest, can be of no concern either to defendant or its grantors and predecessors in interest. The patents of the lands to which defendant has title describe the lands allotted according to the subdivisions thereof so platted, and recite the number of acres so allotted according to the acreage described in the government survey.

Section 2396, U. S. Revised Statutes (now 43 USCA § 752), provides that: "Each section or subdivision of section, the contents whereof have been returned by the surveyor-general, shall be held and considered as containing the exact quantity expressed in such return; and the half-sections and quarter-sections, the contents whereof shall not have been thus returned, shall be held and considered as containing the one-half or the one-fourth part, respectively, of the returned contents of the section of which they may make part."

■ It is a well-established principle that, where lands are granted by patent with reference to an official plat of their survey, the plat, with its notes, lines, descriptions, landmarks, and other particulars, becomes a part of the patent, and ordinarily at least cannot be collaterally attacked. Niles v. Cedar Point Club, 175 U. S. 300, 20 S. Ct. 124, 126, 44 L. Ed. 171; Producers' Oil Co. v. Hanzen, 238 U. S. 325, 35 S. Ct. 755, 59 L. Ed. 1330; Chapman & Dewey Lumber Co. v. St. Francis Levee Dist., 232 U. S. 186, 34 S. Ct. 297, 58 L. Ed. 564; Cragin v. Powell, 128 U. S. 691, 9 S. Ct. 203, 32 L. Ed. 566; Greene v. United States (C. C. A.) 274 F. 145; Tolleston Club v. Carson (Ind. Sup.) 114 N. E. 629, on rehearing, 188 Ind. 642, 123 N. E. 169; Kinsella v. Stephenson, 265 Ill. 369, 106 N. E. 950; Wilson v. Hoffman, 70 Mich. 552, 38 N. W. 558; Sala v. Crane, 31 Idaho, 191, 170 P. 92, 93.

In Niles v. Cedar Point Club, supra, the court, in discussing a government survey and plat of public lands, said: "Generally, these meandered lines are lines which course the banks of navigable streams or other navigable waters. Here, it appears distinctly from the field notes and the plat that the surveyor Rice, stopped his surveys at this 'marsh,' as he called it. These surveys were approved and a plat prepared, which was based upon the surveys and field notes, and showed the limits of the tracts which were for sale. The patents, referring in terms to the survey and plat, clearly disclose that the government was not intending to and did not convey any land which was a part of the marsh."

In Sala v. Crane, supra, it is said: "The patent having conveyed the land according to the official plat of the survey returned by the surveyor general, the plat becomes an integral part of the description and is binding on all parties who obtain title to the land by reference thereto."

On petition for rehearing the court said: "There can be no doubt that the expression in the patent 'according to the official plat of the survey of the land returned to the General Land Office by the surveyor general' refers to the description of the land as well as to the quantity conveyed."

■ If defendant is entitled to the land intervening between that for which its grantors received patents and the Missouri river, then the Indian allottee must have acquired such title notwithstanding the fact that the act of Congress limited his right in one instance to a tract of eighty acres, and in the other instance to a tract of forty acres. In the instant case, the survey, the plat, the selection and allotment entry, the patent, and the mesne conveyances from the patentee to the defendant, all disclose that no more property was conveyed than that contained within the subdivision lines of the property described. These various records and documents reflect the intention of the parties, and where that is manifest it is controlling. The government survey creates and does not merely identify sections, subdivisions, and boundaries, and this survey, the government plat, and the government patent are not open to challenge by collateral attack. Russell v. Maxwell Land Grant Co., 158 U. S. 253, 15 S. Ct. 827, 39 L. Ed. 971; Cragin v. Powell, 128 U. S. 691, 9 S. Ct. 203, 32 L. Ed. 566.

We reiterate that the lands to which the defendant asserts title in this suit are not now and were not at any time since their original selection by the allottee riparian in character, and the defendant is bound by the descriptions contained in the patents, which cannot be challenged in this suit. The judgment appealed from is affirmed.