Proceedings upon the final accounting of the executors of John A. Blake, deceased.

John A. Holzapfel, for accounting executors.
George M. Schuzel, for Emma and Maud Blake.
Joseph J. Hood, special guardian.

───────

(50 Misc. Rep. 487.)

### In re COOK'S ESTATE.

(Surrogate's Court, Monroe County. May, 1906.)

1. TAXATION—TRANSFER TAX—EXEMPTIONS—LINEAL DESCENDANT.
   A son of an adopted daughter of testator is not "a lineal descendant" within the transfer tax act, so as to exempt his legacy from the transfer tax.
   [Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 1691, 1692.]

2. SAME—ADOPTED CHILD.
   A son of an adopted daughter of testator is not an adopted child of testator so that a devise to him will be exempt from the transfer tax under Laws 1887, p. 921, c. 713.
   [Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 1691, 1692.]

3. SAME—WIDOW'S INTEREST.
   Testator's widow contested the probate of his will. Thereafter it was admitted to probate under an agreement by which the residuary legatees transferred their interest in the residue to her. Held, that such residue was taxable at 5 per cent., and not at the rate of 1 per cent., as if it had been given to her by will.

4. SAME—STOCKS OF CORPORATIONS—APPRAISAL.
   Stocks of corporations are properly appraised at the market value on or about the date of the death of the testator, though if the stocks were offered for sale the price would drop and it would take a month or six weeks to close out the stock at the appraised value.
   [Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, § 1718.]

In the matter of the estate of Frederick Cook, deceased. Appeal from an order assessing the transfer tax. Order affirmed.

See 99 N. Y. Supp. 1049.

John Van Voorhis' Sons, for appellants.
Wm. T. Plumb, for respondent Comptroller.

BROWN, S. This is in the matter of an appeal by Barbara Cook, Frederick Cook MacDonell, and the executors of the will of Frederick Cook from the order of the surrogate of Monroe county, fixing and assessing the transfer tax in respect to the transfers of the property of Frederick Cook, deceased. There are three separate objections raised by said appeal.

We will first consider the appeal from that portion of the order fixing the rate of the tax on the legacy in trust to Frederick Cook MacDonell at 5 per cent. instead of 1, as claimed by the appellants. Frederick Cook MacDonell is the son of Fredericka Cook Mac-Donell, who is an adopted daughter of Frederick Cook, the decedent. In the list of exemptions set forth in the transfer tax act a grandchild in terms is not mentioned, and the only words of the statute under which Frederick Cook MacDonell can claim to come in the 1 per cent. class would be either as an adopted child or as a lineal descendant. Under the first suggestion there is no ground to stand on. His mother was the adopted child of Frederick Cook, but that does not make him an adopted child of Frederick Cook. An exemption to an adopted daughter does not inure to her issue. Matter of Fisch, 34 Misc. Rep. 146, 69 N. Y. Supp. 493. So we must determine what is the meaning of the words "lineal descendant" under the transfer tax act. The Century Dictionary defines the words "lineal descendant" to mean "descended from father to son through successive generations," and "descendant" as "an individual proceeding from an ancestor in any degree; issue, offspring, near or remote." "Lineal" is defined as "proceeding in a direct or unbroken line; unbroken in course; distinguished from collateral; as lineal descent; lineal succession." It is also defined as "pertaining or relating to direct descent, hereditary in quality or character, having an ancestral basis or right." "Lineage" is defined as "line of descent from an ancestor; hence, family, race, stock." Worcester defines "descendant" as "the offspring of an ancestor; progeny." "Descent," as "proceeding from an original or progenitor, extraction." Also as "offspring, issue, descendants;" and "descent" in law as "transmission of estates of inheritance." "Lineal" as in a direct line from an ancestor, pertaining to a direct line of descent, hereditary. Now, adoption does not make the person adopted one of the blood or of the issue of the ancestor or decedent, but makes the adopted person capable of inheriting the same as one of the blood or issue. It does not make the adopted one the progeny of or of the lineage of the foster parent; and if the adopted one is not of the lineage, then he or she is not in a direct line from the ancestor, and, accordingly, not a lineal descendant. The blood relatives of a person are either lineal or collateral. Lineal ascendants would be

the father, grandparents, great-grandparents, etc., of the decedent, and in the descending line would be his children, grandchildren, and so on, of the blood. Collaterals would be the uncles and aunts, great-uncles and aunts, and so on, of the ascending line; brothers and sisters, nephews and nieces, great-nephews and nieces, etc., collaterals of the descending line.

Now, in neither of these classes comes an adopted child. An adopted child is by law made a descendant for the purpose of taking the property of the foster parent the same as one of the blood; and, in that regard, the statutes of descent and distribution are modified for the purposes of descent and distribution of the property of a decedent, but it does not make this new adopted descendant either a lineal descendant or a collateral descendant. He is to be termed, if a designation is given to his class, as an "adopted descendant"; "descendant" in this case being used to represent a person to whom property descends as heir at law or next of kin, whether by blood or by adoption, or, in other words, "a person to whom an estate of inheritance is transmitted." The heirs at law and next of kin of said adopted descendant become descendants of the same class as their parent, to wit, an adopted descendant, for the purposes of inheritance, but by being so made capable of inheriting they are not made either lineal descendants or collateral descendants. They continue to be adopted descendants. The cases holding adopted grandchildren as descendants relate to the relationship of the children of those who have been adopted, simply for the purposes of determining their rights to the inheritance, and as descendants to whom property descends, and not as either issue or as lineal descendants. "The word 'descendant' or 'descendants' has never, either in legal phraseology, or in common parlance, been used as a generic term to designate all such persons as do or may take land by descent. 'Descendant' has been and is always used in an active sense, as describing a person moving, descending, or proceeding from another person, and never in a passive sense, as meaning the recipient of something which descends, or comes to him by descent. 'Descendee' might perhaps, properly designate such a recipient." Van Beuren v. Dash, 30 N. Y. 393, 413.

In Mitchell v. Thorne, 134 N. Y. 536, 540, 32 N. E. 10, 12, 30 Am. St. Rep. 699, Chief Justice Follett in the opinion states:

"The word 'ancestor' is an ambiguous one, broad enough to include, but not necessarily including parents, grandparents, and all persons in the ascending line, as far as relationship can be traced. 'Descendant' is an antonym of 'ancestor,' but is not a synonym of 'heir.'"

"The term 'descendants,' used in speaking of the descendants of a deceased person, means "issue.' " Prettyman v. Conaway (Del. Super.) 32 Atl. 15.

Armstrong v. Moran, 1 Bradf. Sur. 314–317, makes a clear distinction between lineal descendant and persons upon whom property might descend, and that the words "lineal descendant" are not equivalent to the term "relation."

In Matter of Moore, 90 Hun, 162, 35 N. Y. Supp. 782, it was held that the children of an adopted daughter of decedent were not entitled to any exemption, since they were not of the blood of the decedent, nor were they in any sense her lineal descendants. Justice Ward, in the opinion handed down in that case, at page 167 of 90 Hun, page 785 of 35 N. Y. Supp., says:

"It cannot be claimed that they (the children of a child who had been adopted by the decedent) are in any sense lineal descendants, for those descendants come in a direct line from and are of the blood of the decedent."

It further appears that the original inheritance tax law (Laws 1885, p. 820, c. 483) did not provide an exemption for adopted children, and at that time adopted children did not possess the right of inheritance from their foster parent. The Legislature of 1887, by chapter 703 (Laws 1887, p. 909), gave adopted children the right to inherit, and the same Legislature, by chapter 713 (page 921), amended the tax law, so as to expressly include adopted children in the exempt classes. Hence, it must be that the Legislature deemed it necessary to make such amendment, so as to bring an adopted child into the exempt classes, and that the fact of being adopted was not sufficient to exempt them without special provision made therefor in the tax law. It has been held that where a will is made giving property to the issue that adopted children cannot take. New York Life Ins. Co. v. Viele, 161 N. Y. 11, 20, 55 N. E. 311, 76 Am. St. Rep. 238.

I am of the opinion that Frederick Cook MacDonell is not a lineal descendant of Frederick Cook, deceased, and, accordingly, that the appraiser was correct in fixing the rate of taxation upon the legacy given to him under the will of said deceased at 5 per cent., and that the order entered thereupon in this court should be affirmed.

Second. As to the claim made that Mrs. Barbara Cook takes the residuary estate as widow by virtue of her purchase of the same from the residuary legatees, in bringing about a settlement of the controversy between herself and said residuary legatees relative to the probate of the will of said decedent, it appears that after the will of Frederick Cook, deceased, was offered for probate Mrs. Cook, the widow, and Fredericka Cook MacDonell, the adopted daughter of said decedent, filed objections to the probate of the will on the ground of incompetency on the part of the said decedent, the testator named in said will; and, after joinder of issue in said proceeding, Mrs. Cook entered into negotiations with the residuary legatees, whereby, for the sum of $97,000 to them paid, and a further agreement that they were to be paid their general legacies named in said will, and her agreement to permit said will to go to probate, the said residuary legatees assigned and transferred their said residuary interest in the estate to said widow. On this state of facts the said widow claims that the rate of taxation of the residuary estate which she receives from the estate of Frederick Cook, deceased, in excess of $97,000 should be taxed at 1 per cent. instead of 5 per cent. The appraiser held the contrary, and the tax was accordingly fixed by the order entered herein at 5 per cent.

It appears to the court that this transfer was simply a sale and assignment of the interest of the residuary legatees to Mrs. Cook, and that the negotiations carried on between her and said residuary legatees resulted in a matter of bargain and sale, in which each one speculated as to what was for his own best interest. The fact that she was attempting to break the will, and that they were fearful that she possibly might do so, induced them to enter into this agreement of a sale of their residuary interests; but this action does not in fact or in law invalidate the will, and the property received by her is received by passing under the will to the residuary legatees, and by assignment from the residuary legatees over to her. The passing of the property under the will relates back to the time of testator's death, and to the persons who were entitled to take it at the time of his death, so far as the law of vesting and passing of property upon the death of a decedent is applicable to the case at bar. To be sure, had the will been denied probate, the widow would have taken one-third of the residuary estate, and then her tax would have been 1 per cent., and Mrs. MacDonell would have taken the other two-thirds, and, being an adopted daughter, the tax on her two-thirds would have been 1 per cent.; but what would have been the result had the will been set aside is not what did take place. The will was admitted to probate; and, by virtue thereof, the residuary legatees took under the will, and their interest as such legatees passed to Mrs. Cook, not as widow, but as purchaser of the vested interests of the said residuary legatees.

Matter of Wolfe, 89 App. Div. 349, 85 N. Y. Supp. 949, affirmed 179 N. Y. 599, 72 N. E. 1152, does not apply to this case. That was a case where the general legatees refused to accept the legacies given to them and renounced the same, and, accordingly, the legacies to them fell into the residuary estate, and, under the terms of the will, were distributed as residuary to the residuary legatees, and then rightly it was held that that portion, having become a part of the residuary estate, was taxable as residuary to the parties taking the same according to their relationship to the decedent. In that case no valuable consideration was given for the renouncement and no assignment was made of their legacy. Here we are confronted with an absolute bargain and sale for value of a number of residuary legacies, not the renouncement without consideration of a general legacy.

I am accordingly of the opinion that the property which passes to Barbara Cook, the widow of Frederick Cook, through the transfers to her of the interest of the residuary legatees under the last will and testament of Frederick Cook, deceased, should be taxed at 5 per cent., and that the order heretofore entered herein relative to that question should be affirmed.

Third. The appellants also appeal from that portion of the order fixing the tax on said estate, on the ground that certain stocks should be reduced by 10 per cent. from the value fixed by the appraiser, for the reason that the stocks included in said appeal are local stocks, and not listed on any stock market other than the Rochester Stock Exchange, and that the valuation placed upon said stocks and based upon the quotations of said market at or about the time of the death

of Frederick Cook should be reduced 10 per cent. to reach their fair market value; and we are referred to the Curtice Case, decided by the Appellate Division, Fourth Department (111 App. Div. 230, 97 N. Y. Supp. 444), and just recently affirmed by the Court of Appeals, as an authority for such reduction.

The stocks referred to are the American Fruit preferred, Case Manufacturing Company, Ohmer Car Register preferred, Rochester Telephone, New York & Kentucky common, New York & Kentucky preferred, Pneumatic Signal, Stromberg-Carlson common, Stromberg-Carlson preferred, General Railway Signal Company preferred, and General Railway Signal Company common. The appraiser fixed these stocks substantially as fixed by the witness who was called by the executors, and who had been one of the appraisers who inventoried the property of the estate of Frederick Cook upon the statutory inventory taken by the executors with the aid of the appraisers appointed by the surrogate for that purpose; and it appears that he fixed those values at the market value of the respective stocks on the Rochester Stock Exchange, on or about the date of the death of Frederick Cook, deceased, except in one or two instances where, there being no quotation on the Rochester market, he gave his own opinion or sought information from interested parties who were conversant with the affairs of such corporation, and from such information fixed the value as to such stock. He also testified that, if these stocks were offered for immediate sale, the price would drop from 10 to 50 points, but he further testified: "It would take at least a month or six weeks to close out these stocks at the prices I have quoted in the inventory." There was no necessity for the disposal of those stocks by the executors in a month or six weeks. In fact, the executors could not dispose of them until after the probate of the will, and even then they would not be required, and in fact it would be contrary to good business judgment to throw a large amount of stock on the market at once, unless there was special reason for so doing.

In the Curtice Case over a third of the capital stock of the corporation in question was owned by the testator, and in the neighborhood of another third by his brother, and accordingly it was spoken of as a "private corporation" by Justice Hiscock in his opinion, delivered with the decision of the Appellate Division, and for the reasons above stated the stock in the Curtice Company was not necessarily worth the quotations of the stock market, and from those facts the Appellate Division reduced the valuation of the stock as appraised on the Rochester stock market valuation. It does not seem to me that the Curtice Case applies to the Cook Case. All of the above stocks owned by the Cook estate, although local stocks, are not stocks that could be classed as stocks of private corporations, or as corporations largely owned by one family. There is no evidence that Mr. Cook's holding was a large percentage of the total capitalization of said companies. Several of the stocks are stocks of large corporations engaged in important enterprises and apparently doing a prosperous business, and the rest of the companies that do not come under that head are small companies, as to which there is no evidence that Mr.

Cook's interest therein was so large as to affect the market. values of the stocks.

I accordingly hold that the stocks in question do not come under the conditions which obtained in the Curtice Case, and that the value of said stocks as fixed by the appraiser, and subsequently fixed by the order entered herein, is correct, and that portion of the order fixing the tax thereon should be affirmed.

In conclusion, I find that the order fixing the tax herein, appealed from, should be affirmed. Let an order be entered accordingly.

Order affirmed.