*PALMER et al. v. KING et al.

No. 9483—Opinion Filed July 1, 1919.

Rehearing Denied Sept. 9, 1919.

(Syllabus by the Court.)

1. Indians—Allotment—Descent.

A full-blooded Choctaw Indian woman died in 1906 possessed of an allotment of land. Her nearest relatives on her father's side were an uncle and cousin, and on her mother's side were cousins, all being Indians by blood. The paternal heirs claimed that section 2532 of Mansfield's Digest of the Laws of Arkansas controlled the devolution of her

---
*Appealed to the Supreme Court of the United States.

estate, and that they were the sole owners thereof. The maternal heirs claimed that section 2531, Id., controlled, and that they take an undivided one-half of her estate. Held, that section 2531 controls, and that an undivided one-half of the allotment possessed by the deceased at the time of her death goes to the maternal heirs, and the other half goes to the paternal heirs.

2. Statutes — Construction — General and Specific Terms.

Where general terms or expressions in one part of the statute are inconsistent with more specific or particular provisions in another part, the particular provision will be given effect, as a clearer and more definite expression of the legislative will.

Error from District Court, Haskell County; W. H. Brown, Judge.

Action by Rachael King and others against N. W. Palmer and others. From judgment for plaintiffs defendants bring error. Affirmed.

A. L. Beckett and J. E. Whitehead, for plaintiffs in error.

G. A. Holley and E. D. Means, for defendants in error.

HIGGINS, J. Charlotte Winlock, a full-blood Choctaw Indian woman, departed this life in what is now Haskell county, Okla., January 14, 1906, the owner of an allotment of land by virtue of her citizenship in said tribe, leaving surviving her Rufus Winlock, a paternal uncle, Martin Compelube, a paternal cousin, and Rachael King and other defendants in error, maternal cousins; all heirs, both paternal and maternal, being of Indian blood. In May, 1909, the paternal heirs deeded a portion of the lands allotted to the deceased, and from this deed the other parties plaintiffs in error derive their title.

In February, 1914, this suit was commenced by the maternal cousins for an undivided one-half interest in the lands, to wit: West half of the southwest quarter and the southwest quarter of the northwest quarter of section 36, township 9 north, range 21 east, Haskell county, state of Oklahoma. In the answer of plaintiffs in error they contend that the paternal heirs take all the lands involved, to the exclusion of the maternal heirs, and ask for judgment accordingly. The deed of the paternal heirs was executed in May, 1909, prior to the rendition of the opinion in Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615, and at a time when many believed the estate was a new acquisition. The property thus would go to the paternal heirs in the instant case, if this had been such an estate.

The parties agreed upon the facts, but disagreed as to what section of chapter 49, Mansfield's Digest of the Laws of Arkansas, controls; plaintiffs in error's contention being that section 2532 controls, and defendants in error insisting that section 2531 controls. These sections are as follows:

"2531. In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided.

"2532. The estate of an intestate, in default of a father and mother, shall go, first, to the brothers and sisters, and their descendants, of the father; next, to the brothers and sisters, and their descendants, of the mother. This provision applies only where there are no kindred, either lineal or collateral, who stand in a nearer relation."

If section 2532 controls, then the plaintiffs in error take all; but if section 2531 controls, then defendants in error take an undivided one-half of the real estate involved, and plaintiffs in error take the other half. The trial court held that section 2531 controlled the devolution of the real estate of the deceased, and that each line of heirs took an undivided one-half interest, from which judgment plaintiffs in error appealed to this court.

This court and the Supreme Court of the United States have passed upon two cases in which the facts are similar to the case at bar. Brady v. Sizemore, 33 Okla. 169, 124 Pac. 615, and 235 U. S. 441, 35 Sup. Ct. 135, 59 L. Ed. 308; Roberts v. Underwood, 38 Okla. 376, 132 Pac. 673, and 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007. The opinions of the Supreme Court of the United States are conflicting as to the rights of the paternal and maternal heirs. In the first case it is held that the paternal heirs took all, to the exclusion of the maternal heirs, and in the second case held that the paternal and maternal heirs each took an undivided one-half interest. This conflict has apparently come about for the reason that each case was presented on other issues, and not upon the issue as to the conflicting rights of these two lines of heirs. In both cases the Supreme Court of the United States, in making the findings as to the rights of these lines of heirs, followed the concession of the parties. In the first case the opinion so states, and in the second the pleadings show that the court followed that which was conceded. We are

thus required to seek adjudicated cases from other courts.

In Kelly's Heirs v. McGuire, 15 Ark. 582, Charles Kelly emigrated to Arkansas in 1815, and married a widow, Mrs. Craig, who had two daughters by a former marriage; that Kelly accumulated quite a fortune, consisting of real and personal property; that he died in 1831, leaving surviving him his wife and son, Clinton Kelly; that the widow died in 1836, and in 1844 Clinton Kelly died, leaving surviving him his half-sisters, all having the same mother, but different fathers, and a paternal grandfather and other paternal kindred. Clinton Kelly died possessed of lands inherited from his father. The half-sisters and paternal kindred each claimed to be the sole owners of the lands left by the deceased. The court held that section 2531 controlled, and that the paternal heirs took all the real estate to the exclusion of the half-sisters, not for the reason, as insisted, that section 2532 was made inapplicable by the existence of kindred in a nearer relation, but for the reason that the estate came by the father; the language of the opinion being as follows:

"The manifest intention of the first part of this section [referring to section 2531, supra] was to preserve ancestral estates in the line of the blood from whence they came. It was a partial adoption or recognition of common-law principle, which invariably followed the line of the blood. * * * In other words, it remains in the paternal or maternal line, from whence it was derived."

Again in Beard v. Mosely, 30 Ark. 518. Hugh Beard died, survived by his wife and a daughter, Eleanor. The widow married Mr. Mosely. The daughter died without issue, having never married, possessed of real estate inherited from her father and leaving her mother surviving her. The paternal and maternal heirs, the mother in this instance, claimed the real estate left by the deceased daughter, which she inherited from her father, Hugh Beard. The court held that the paternal kindred took, to the exclusion of the mother and maternal kindred, not for the reason, as insisted, that section 2532 was inapplicable, there being kindred in a nearer relation, but for the reason that the estate came by the father and must ascend to his heirs, the paternal kindred.

Plaintiffs in error contended that section 2532 is a general statute, and that a literal construction should be given thereto, applying to all estates. In order to determine the legislative intent of section 2532, it is necessary to consider all of chapter 49, supra. Section 2531 refers to a particular estate, one left by an intestate, which came by the

father or mother, and fixes the devolution of this estate, which says it must ascend to the side from which it came. Section 2532 is a general statute. The rule of construction of conflicting statutes, as set forth in 36 Cyc. 1130, is as follows:

"Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect, as clearer and more definite expressions of the legislative will."

The estate involved in the case at bar is ancestral. Shulthis v. McDougal, supra. The father and mother of Charlotte Winlock are both of Indian blood. Applying the reasons given in the above cases cited from the Arkansas courts and the general rule of construction of conflicting statutes, we find that section 2531 controls in the devolution of the real estate of the case at bar, and that each line of heirs took an undivided one-half interest in the allotment of the deceased.

The judgment is affirmed.

All the Justices concur.