### MINSHALL et al. v. BERRYHILL.

No. 11523—Opinion Filed Sept. 13, 1921.

(Syllabus.)

1. **Indians—Creek Lands—Death Before Allotment—Nature of Estate.**

Where an enrolled citizen of the Creek Tribe died on July 26, 1899, before receiving her allottment, or a certificate of selection therefor, held that the deceased was not seised of any estate of inheritance therein.

2. **Same—Devolution of Allotment— Laws Governing.**

Where a duly enrolled citizen of the Creek Tribe of Indians died on July 26, 1899, before receiving her allotment, and on the 4th day of December, 1901, a selection was made by the mother of the deceased allottee on behalf of the heirs of such deceased allottee, which selection in accordance with the provisions of the Creek Supplemental Agreement ratified July 26, 1902 (32 Stat. 500, c. 1323), was contested and canceled, and thereafter on the 5th day of February, 1903, another selection was made on behalf of the heirs of such deceased allottee, held, that the applicable provisions of c. 49 of Mansfield's Digest of the Laws of Arkansas govern the devolution of the second selection.

3. **Same.**

Where an allotment was made in February, 1903, to a Creek Indian, who died in July, 1899, the devolution of such an allotment is controlled under act of Congress June 30, 1902, c. 1323, sec. 6, 32 Stat. L. 501, providing that the descent and distri-

bution of the property of Creek Indians shall be according to the applicable provisions of c. 49 of Mansfield's Digest of the Statutes of Arkansas, and under act of March 1. 1901, c. 676, sec. 2831, 31 Stat. L. 869, providing that descent and distribution shall be according to the laws of the Creek Nation; and held, no title being vested in severalty till allotment was made and after the passage of the act of Congress June 30, 1902, that the devolution of such estate is controlled by applicable provisions of c. 49 of Mansfield's Digest of the Statutes of Arkansas.

**4. Same.**

Where an enrolled full-blood Creek Indian allottee died in July, 1899, unmarried, intestate and without issue, leaving surviving a full-blood mother duly enrolled, one brother of the whole blood and one of the paternal one-half blood, both enrolled citizens of the Creek Nation as full-blood Indians of the Creek Tribe of Indians, and where the father of such allottee was a full-blood Creek Indian, enrolled as such on the old tribal rolls of the Creek Nation, but had died prior to the death of the deceased allottee and too early to be enrolled on the final approved rolls, as prepared by the Commission to the Five Civilized Tribes, selection of the lands to which such deceased allottee was entitled being made in February, 1903, held to be an ancestral estate, the devolution of which is controlled by the applicable provisions of c. 49 of Mansfield's Digest of the Statutes of Arkansas, and that the mother takes one-half of the allotment in the maternal line and the two brothers take the other one-half in the paternal line.

**5. Oil and Gas — Lease — Production by Lessee, Where Third Person Establishes Interest in Land—Action by Third Person—Measure of Damages.**

Where a lessee in good faith takes peaceful possession of the leased premises, believing that the lessor owned the entire title in the premises, and an action is brought by another person, who establishes an interest in the premises, the measure of damages arising in favor of the party establishing a partial interest in the premises is the value of his share of the oil at the surface less the reasonable cost of production.

Error from District Court Tulsa County; Owen Owen, Judge.

Action by Willie Berryhill against E. R. Minshall, J. F. Sweeny, Lewis R. Lewis, Howard W. Phillips, and Prairie Oil & Gas Company, in ejectment and for an accounting. Judgment for plaintiff and defendants bring error. Affirmed.

Randolph, Haver & Shirk, H. M. Gray, and West, Sherman, Davidson & Moore, for plaintiffs in error.

Ernest B. Hughes, Earl Foster, and Cottingham. Hayes, Green & McInnis, for defendant in error.

KENNAMER, J. Willie Berryhill, as plaintiff, instituted this action in the district court of Tulsa county against E. R. Minshall, J. F. Sweeney, Lewis R. Lewis, Howard W. Phillips, and Prairie Oil & Gas Company, a corporation, to establish his ownership and title in and to an undivided one-fourth interest in the lands described in his petition, for possession, and for his second cause of action set out in his petition prayed the judgment of the court for an accounting of the rents and profits arising from said lands during the time the defendants had been in possession of the same.

The plaintiff asserted ownership to an undivided one-fourth interest in the lands in controversy by reason of the following alleged facts set out in his petition: That the lands involved in the action were selected on the 5th day of February, 1903, on behalf of the heirs at law of Susanna Berryhill, enrolled on the final rolls of the Creek Indians, as prepared by the Commission to the Five Civilized Tribes, opposite roll No. 4777 as a member of the Creek Tribe of Indians of the full blood; that the allottee, Susanna Berryhill, was born on or about August 9, 1898, and died on or about the 26th day of July, 1899, intestate, unmarried, without issue, leaving surviving her her mother, Louisa Berryhill, a full-blood Creek Indian enrolled as such on the approved tribal rolls, Charley Berryhill, a brother of the whole blood, enrolled on the approved tribal rolls as a full-blood Creek Indian, and Willie Berryhill, a paternal one-half brother, enrolled on the approved tribal rolls as a full-blood Creek Indian: that Samuel Berryhill was the father of the said Susanna Berryhill, was a citizen of the Creek Tribe of Indians enrolled as such on the tribal rolls thereof; that the said Samuel Berryhill was dead at the time of the selection of the allotment, having died about the year 1898; that the estate of the said Susanna Berryhill was an ancestral estate, the devolution of which is governed by the applicable provision of chapter 49 of Mansfield's Digest of the Statutes of Arkansas, and that one-half of the estate of Susanna Berryhill, deceased, ascended to her mother, Louisa Berryhill, and one-half to the paternal heirs.

The defendants Minshall, Sweeney, and Lewis filed answer, admitting the lands described in the plaintiff's petition were allotted to one Susanna Berryhill as her proportionate share of the lands of the Creek

Nation; that the allottee was a full-blood Creek Indian, enrolled as such on the final rolls of Creek citizens opposite roll No. 4777; the death of the allottee substantially as alleged by the plaintiff, and the selection of the lands on February 5, 1903, and the issuance of patents therefor, and that Louisa Berryhill was the mother of the deceased allottee and enrolled citizen of the Creek Nation.

The defendants denied that Samuel Berryhill, alleged to be the father of Susanna Berryhill and of the plaintiff, Willie Berryhill, was a citizen of the Creek Nation, and denied that either he (Samuel Berryhill) or his heirs inherited or were capable of inheriting any part of the allotment of the said Susanna Berryhill. These same defendants alleged that on December 23, 1912, Louisa Berryhill, under the name of Louisa Brown, as the sole heir at law of the said Susanna Berryhill, executed and delivered to E. R. Minshall an oil and gas mining lease of the lands described in the plaintiff's petition; that said lease was approved by the county court of Tulsa county, Oklahoma, and the Secretary of the Interior; that on November 6, 1918, the Department of the Interior relinquished supervision of the said lease, it having been made to appear that the lands had been conveyed by Louisa Berryhill to the defendant H. W. Phillips; that the defendant E. R. Minshall executed and delivered to the defendants Sweeney and Lewis an assignment of an interest in the lease.

The defendant Phillips filed separate answer, denying that the plaintiff was the owner of any estate either legal or equitable in the lands, but admitting the allotment of the lands as pleaded by the plaintiff; that the allottee, Susanna Berryhill, was the daughter of Louisa Berryhill and Samuel Berryhill; that Louisa Berryhll was an enrolled Creek Indian, as pleaded by the plaintiff; but alleged that Samuel Berryhill was not a citizen of the Creek Nation and was not on the final rolls, and, therefore, was prohibited from receiving either directly or indirectly any lands, money, or property of any of the Creek Tribe of Indians.

The defendant Phillips, further answering, alleged that pursuant to the laws and treaties in such cases made and provided, the said Louisa Berryhill, the mother of the deceased allottee, did, on the 4th day of December, 1901, select for and on behalf of the heirs of said Susanna Berryhill,

then deceased, 160 acres of land as the proportionate share of the said Susanna Berryhill's distributive share of the lands of the Creek Nation, and that an allotment certificate was duly issued for the same and delivered to Louisa Berryhill, copy of the certificate being attached to the answer and made a part thereof; that this selection was contested, and after a hearing had the land described in said allotment certificate was awarded to another and thereafter the said Louisa Berryhill in lieu of said selection for the heirs of said Susanna Berryhill was permitted to and did select the real estate described in the plaintiff's petition, but that said selection was made in lieu of and as a substitute for the original selection made on December 4, 1901, and by operation of law and for the purpose of determining who are the persons entitled to receive the lands of the heirs of deceased allottee took effect as of the date of the original selection, which was on December 4, 1901, and that the law in force under which the heirs of Susanna Berryhill must be determined for the purpose of deciding who should receive the allotment to which she would have been entitled if living must be ascertained according to the law in force on December 4, 1901, the date of the first selection, which at that time was the law of descent and distribution of the Creek Nation; and the defendant Phillips alleged that the heir at law of the said Susanna Berryhill, according to the laws of descent and distribution of the Creek Nation, was her mother, Louisa Berryhill, that on the 11th day of November, 1916, Louisa Berryhill, now Brown, joined by her husband, Joe Brown, executed a warranty deed conveying said lands to the defendant Phillips, which deed was approved by the county court of Tulsa county, the same having jurisdiction of the settlement of the estate of Susanna Berryhill, deceased, and that since said day he had been the absolute owner in fee simple of the lands in controversy under said deed.

The cause was tried by the court, jury having been waived by the parties. Judgment was rendered in favor of the plaintiff for an undivided one-fourth interest in the lands and for $83,274.84, against the defendants Minshall, Sweeney, and Lewis, the same being one-fourth of the amount received by said defendants for oil and gas produced and sold from the premises, the court having deducted one-fourth ex-

pended by them in drilling and developing the premises.

The court further adjudged that the plaintiff recover from the defendant H. W. Phillips one-fourth of the total sum, received by him for oil and gas produced and saved from the premises, and fixed said amount at the sum of $14,987.56.

The defendants filed separate motions for new trials, which were by the court overruled, and this appeal is prosecuted by all of the defendants to reverse the judgment of the trial court.

It appears from the record that the defendant Prairie Oil & Gas Company is not interested in this action except that said company was purchasing oil from the defendants produced from the premises under the lease owned by the defendants Minshall, Sweeny, and Lewis. Upon an examination of the record it appears to us that there is no serious dispute between the respective parties on the material facts necessary to a determination of this cause.

Counsel for the defendant Phillips contend that he (Phillips) owns the fee-simple title to the lands in controversy under the deed executed by Louisa Berryhill, mother of Susanna Berryhill, deceased, contending that Louisa Berryhill inherited, as the only heir of Susanna Berryhill, the entire allotment. It is their contention that the selection first made by Louisa Berryhill on December 4, 1901, was canceled and set aside solely by reason of the mistake of the Department of the Interior and without any fault on the part of Louisa Berryhill, and that, under the familiar doctrine of the relation back, by the second selection made in 1903 the said Louisa Berryhill acquired the title to the land in question. Under the Creek laws of descent and distribution in force on the date of the attempted first selection by Louisa Berryhill of an allotment on behalf of the heirs of Susanna Berryhill, deceased, December 4, 1901, Louisa Berryhill, the mother of the deceased allottee, would have inherited the entire allotment. It appears that this selection was canceled for good and valid reasons; then, prior to the selection of the lands in question by Louisa Berryhill on behalf of the heirs of Susanna Berryhill, deceased, the Supplemental Creek Agreement had been adopted and approved June 30, 1902 (32 Stat. L. 500, c. 1323). Section 6 of said treaty put in force the laws of descent and distribution as contained in chapter 49 of Mansfield's Digest of the Statutes of Arkansas; said provision being as follows:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat. L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory; Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation; and provided, further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

The law of descent and distribution applicable to the estate of Susanna Berryhill, deceased, between the dates of the first and second selection made on behalf of the deceased allottee was changed from the Creek law of descent and distribution to that of the law as found in chapter 49, Mansfield's Digest. It is conceded by the defendants that the law of descent and distribution in force on the date that the allotment takes effect governs the devolution of the estate in controversy. Brady v. Sizemore et al., 33 Okla. 169, 124 Pac. 615; McKee v. Henry, 201 Fed. 74; Woodbury v. U. S., 170 Fed. 302; Bruner v. Nordmeyer, 64 Okla. 163, 166 Pac. 126; Hamilton v. Bahnsen, 75 Okla. 216, 183 Pac. 413; Ned et al. v. Countiss et al., 84 Okla. —, 203 Pac. 168.

We conclude that the devolution of the estate in question, having been selected subsequent to the approval of the Supplemental Creek Agreement, June 30, 1902 (32 Stat. L. 500, c. 1323), is governed by the applicable provisions found in chapter 49 of Mansfield's Digest of the Statutes of Arkansas, and under the numerous decisions of this court and the federal courts the estate is an ancestral estate, and the father and mother of the deceased allottee being both full-blood citizens of the Creek Tribe of Indians, one-half of the estate ascends to the mother and one-half to the paternal heirs, the father of the said deceased allottee being dead on the date of the selection of the allotment. Shulthis v. McDougal, 170 Fed. 529; Roberts v. Underwood, 38 Okla. 376, 132 Pac. 673, 59 L. Ed. (U. S.) 1007; Pigeon v. Buck, 38 Okla. 101, 131 Pac. 1083, 59 L. Ed. (U. S.) 1007; Palmer v. King, 75 Okla. 276, 183 Pac. 411.

Counsel for the defendant Phillips insist that the second selection made by Louisa Berryhill on behalf of the heirs

of Susanna Berryhill, deceased, shall relate back as of the date of the first selection, and the descent of the estate is controlled by the Creek law of descent and distribution, which was in force on the date of the first selection. The doctrine of relation is invoked as a legal fiction and applied solely for the protection of persons who without fault on their own part would otherwise sustain an injury.

It appears to us that whether the doctrine of relation applies depends on whether or not Louisa Berryhill by reason of the first selection secured any vested right in the estate of Susanna Berryhill, deceased. The right under the law to contest selections within a specified time existed at the time Louisa Berryhill made the first selection, and she happened to select for an allotment on behalf of the heirs of Susanna Berryhill, deceased, lands upon which another person had the right to allot the same, and within the time prescribed by law the person vested with the better right to select the lands instituted a contest and the selection made by Louisa Berryhill was canceled. Under section 4 of the Creek Supplemental Treaty the Commission to the Five Civilized Tribes, under the direction of the Secretary of the Interior, were vested with exclusive jurisdiction to determine all controversies arising between citizens as to their right to select a particular tract of land. Section 4 reads as follows:

"Exclusive jurisdiction is hereby conferred upon the Commission to the Five Civilized Tribes to determine, under the direction of the Secretary of the Interior, all controversies arising between citizens as to their right to select certain tracts of land."

Section 5 of said treaty specifically authorizes the commission to cancel selections made in violation of the rights of other parties, or through mistake, and authorizes any citizen to file a contest where the lands to which he was entitled to allot had been selected by some other person. Sorrels v. Jones et al., 26 Okla. 569, 110 Pac. 743.

The Creek laws of descent and distribution in force at the time of the first selection never operated upon the estate of Susanna Berryhill, for the reason no estate was ever created, said attempted selection having been terminated by operation of law and before the creation or the bringing into existence of the estate in question. The laws of descent and distribution having been changed

prior to the time descent was cast, Louisa Berryhill never acquired any vested interest in the estate of the deceased allottee, and her interest in the estate of Susanna Berryhill, deceased, must be governed by the law of descent and distribution in force on the date descent was cast, which in this cause, according to the numerous authorities, was the date that the selection of the allotment became effective. Laws of descent and distribution are subject to change at any time, and no one has a vested right to inherit the property of any person prior to the time descent is cast. Jefferson v. Fink, 247 U. S. 288, 62 L. Ed. 1117; Pigeon v. Stevens et al., 81 Okla. 180, 198 Pac. 309.

Many cases have been cited by counsel for the defendant Phillips to sustain their contention that the doctrine of relation should be applied to the transaction surrounding the two selections made on behalf of the heirs of the deceased allottee, Susanna Berryhill, but most of these cases present a transaction where the federal government through Congress made a grant of lands to particular individuals, or corporations, upon the condition that such persons, or corporations, should perform some condition prior to the vesting of title, and in such cases it has been uniformly held that after the conditions were performed the title in the lands related back to the date of the original grant and that the inception of title was of the date of the grant, but these cases do not apply to cases involving the title to allotted Indian lands. This court and the federal courts have uniformly held that the title to Indian lands may be acquired only in the manner prescribed by federal law.

The Supreme Court of the United States, in the case of Mullins v. Pickens, 250 U. S. 560, 63 L. Ed. 1158, had before it the question as to the validity of warranty deeds executed by the heirs of deceased allottees, the lands having been selected by the personal representatives of the deceased allottees, the allottees having died subsequent to the ratification of the supplemental Choctaw and Chickasaw Agreement of July 1, 1902 (c. 1362. 32 Stat. L. 641). The deeds in question were executed subsequent to the first selection made by the personal representatives of the deceased allottees, and contained a clause providing that, in case the first selection for allotment made was set aside in contest proceedings and other selection thereafter made, the deeds were to operate as a conveyance of the lands selec-

ted in lieu of the first selection. The first selections made were canceled. The question decided by the court was whether the grantees in the first deeds under the special covenants contained in them were entitled in equity to the lands subsequently allotted. The court held that the lands selected under section 22 of the treaty on behalf of the heirs of the deceased members of the tribe, that the equity of the heir in the lands to which the deceased allottee would have been entitled to had he lived, had its inception at the selection of the allotment, and that any previous attempt of the heir to sell his expectancy was contrary to the spirit and policy of the treaty. The court approved the doctrine it had formerly announced in the case of Franklin v. Lynch, 233 U. S. 269, 58 L. Ed. 954, in which it was held that until allotment of the particular land in question the Indian had no undivided interest in the tribal land, or any vendable interest in any particular tract, and that under the treaty any attempted conveyance prior to allotment was void, that even a citizen of the tribe by marriage and not an Indian by blood could not convey, although unrestricted, any title until the particular land or tract had been allotted, and that the interest of the citizen prior to allotment was a mere float or expectancy.

To the same effect, see Woodbury v. U. S., 170 Fed. 302; McKee v. Henry, 201 Fed. 74. In the case of McKee v. Henry, supra, Judge Smith, in delivering the opinion of the court, said:

"At any time after enrollment, and before allotment, Congress could have repealed all legislation providing for allotment, and have restored the old system of tribal control; and, if this is true, manifestly no inheritable interest vested in any one until allotment." Hayes v. Barringer, 168 Fed. 221.

Counsel for the defendants Minshall, Sweeney, and Lewis with great earnestness contended that the plaintiff in this action cannot inherit through his father, Samuel Berryhill, for the reason that Samuel Berryhill died prior to the completion of the final tribal rolls, as approved by the Commission to the Five Civilized Tribes, and the name of Samuel Berryhill not appearing on the approved rolls, he was not a citizen of the tribe, as contemplated by section 6 of the Supplemental Creek Agreement of June 30, 1902. Upon an examination of said treaty, supra, we find the words "Creek citizens" defined as being members of the Muskogee Creek

Tribe of Indians. The first proviso found in section 6 of this treaty provided that every citizen of the Creek Nation, male and female, and their Creek descendants shall inherit. The word "descendants," in volume 2 of Words and Phrases, is defined as follows:

"The Century Dictionary defines the word 'descendant' as 'an individual proceeding from an ancestor in any degree; issue; offspring near or remote'; and Worcester defines 'descendant' as 'the offspring of an ancestor; progeny.'" In re Cook's Estate, 100 N. Y. Supp. 628, 629, 50 Misc. Rep. 487.

The plaintiff in this cause meets every requirement of the Creek Supplemental Treaty. He is a Creek citizen and is the descendant of a Creek citizen. It is true that his father, Samuel Berryhill, did not live until such a time as would make him eligible to be enrolled upon the final approved rolls of the Creek Tribe of Indians, as prepared by the Commission to the Five Civilized Tribes, but he was enrolled on the tribal rolls of the Creek Tribe of Indians and recognized by the Creek Tribe as a citizen of the tribe, as evidenced by his name appearing on the tribal roll. His deceased child, Susanna Berryhill, was enrolled as a full-blood Creek Indian, evidencing the fact that the Commission to the Five Civilized Tribes investigated the tribal rolls of the Creek Nation and found that the mother and father of Susanna Berryhill were both enrolled on the tribal rolls of the tribe as full-blood Indians, and, therefore, the commission proceeded to enroll the deceased allottee as full-blood, and under the plain and unmistakable language of the first proviso of section 6 of the Supplemental Creek Treaty it is obvious that the Creek Indians had no intention of disinheriting any citizen of the tribe, or his descendants, merely because his name did not appear on the final approved rolls of the tribe, and this court in numerous decisions has repudiated such contention. Finley v. Thompson, 68 Oklahoma, 174 Pac. 535; Glory v. Bagby, 79 Okla. 155, 188 Pac. 881; Johnson v. Dunlap, 68 Oklahoma, 173 Pac. 359; McDougal v. McKay 43 Okla. 261, 142 Pac. 987, 237 U. S. 372, 59 L. Ed. (U. S.) 1001; Palmer v. King, 75 Okla. 276, 183 Pac. 411; Pidgeon v. Buck, 38 Okla. 101, 131 Pac. 1083, 237 U. S. 385, 59 L. Ed. 1007; Roberts v. Underwood, 59 L. Ed. (U. S.) 1007; Thorne v. Cone, 47 Okla. 781, 150 Pac. 701.

Counsel for the defendants in supporting their contention that the plaintiff in this

action cannot inherit for the reason that his father was not an enrolled citizen upon the final rolls, as approved by the Commission to the Five Civilized Tribes, insist that the case of Campbell v. Wadsworth, 248 U. S. 169, supports this contention. It is true that this authority held that the wife, and two children of Louis Cox were precluded from inheriting the allotment of Louis Cox, the deceased allottee, who was a member of the Seminole Tribe of Indians, because they were enrolled as Creek citizens; but an examination of the Seminole Treaty approved June 2, 1900 (31 Stat. L. 250), discloses the following provisions:

"And the rolls, so made, when approved by the Secretary of the Interior, as provided by said act of Congress, shall constitute the final rolls of Seminole citizens, upon which the allotment of lands and distribution of money and other property belonging to the Seminole Indians shall be made, and to no other persons: Second: If any member of the Seminole Tribe of Indians shall die after the thirty-first day of December, eighteen hundred and ninety-nine, the lands, money, and other property to which he would be entitled if living, shall descend to his heirs who are Seminole citizens, according to the laws of descent and distribution of the state of Arkansas, and be allotted and distributed to them accordingly."

The Supreme Court of the United States, applying the above provisions to the Seminole Treaty, held that the wife and daughters of the deceased allottee, Cox, being enrolled as Creek citizens, were prohibited under said treaty from inheriting the estate of a deceased Seminole allottee. In the Seminole Treaty no one was recognized as a Seminole citizen unless his name was found on the rolls as finally compiled and approved by the Commission to the Five Civilized Tribes. Not so in the Creek Supplemental Treaty. A Creek citizen in the first section of said treaty is defined as follows:

"The words 'citizen' or 'citizens' shall be deemed to refer to a member or members of the Muskogee Tribe or Nation of Indians."

But in the case at bar, applying the rule as announced in the case of Campbell v. Wadsworth, supra, the plaintiff in this case is an enrolled citizen on the final rolls as approved and compiled by the Commission to the Five Civilized Tribes, and, therefore, meets every requirement of the provisions of the Creek Treaty.

The primary purpose of making rolls by the Commission to the Five Civilized Tribes was to ascertain the number and identity of those entitled to participate in the allotment and distribution of tribal property, and while the court in the case of Campbell v. Wadsworth, supra, denied the daughters of the allottee the right to inherit from their deceased father because they happened to be enrolled as Creek citizens, a matter they had absolutely no control over as to how they were enrolled, the court in construing the Seminole Treaty to have such an effect attributed to the Seminole Tribe of Indians an unnatural attitude towards their offspring; but it is clear from the provisions of the Creek Supplemental Treaty that the Creek Indians never intended to disinherit a Creek citizen, or descendant of a Creek citizen, merely because their names failed to appear on the final approved rolls.

There is one other reason why the contention of the defendants cannot be sustained in this cause. The estate being an ancestral estate, having come to the allottee by reason of the blood of the father, and the mother making the allottee eligible to enrollment in order that she could participate in the allotment and distribution of the property belonging to the Creek Tribe, and the father being dead on the date of the death of the allottee, the plaintiff, as a brother of the deceased allottee, being an heir on the paternal side, inherits directly from the deceased allottee as the propositus, and not through the ancestor from whom the estate came. Oliver v. Vance, 34 Ark. 564; Barnard v. Bilby, 68 Oklahoma, 171 Pac. 444; Powers v. Morrison, 88 Tex. 133.

The defendants have complained that the court erred in failing to require the plaintiff, Willie Berryhill, to prove that Susanna Berryhill was the legitimate child of Samuel Berryhill and Louisa Berryhill. Susanna Berryhill having been born while Samuel Berryhill and Louisa Berryhill were living together as husband and wife, recognized by them as their child, the presumption is in favor of her legitimacy. The defendants did not raise this issue by the pleadings filed by them in the cause. No authorities have been cited by counsel for defendants to sustain their contention; but the following authorities hold that where a marriage in fact has been shown, the law raises a presumption that it is valid, and the burden is on him who questions its validity: Chancy v. Whinnery, 47 Okla. 272, 147 Pac. 1036; Jones v. Jones, 63 Okla. 208, 164

Pac. 463; Lewis v. Lewis, 60 Okla. 60, 158 Pac. 368.

The defendant in error, Willie Berryhill, has filed cross-petition and assigned as error the action of the trial court in allowing the defendants credit for one-fourth of the total cost expended in prospecting and developing the lands in controversy in producing oil and gas. Upon an examination of the record we are of the opinion that the action of the court in allowing the defendants this credit was not error.

The measure of damages for taking oil from land through mistake, where the lessee entered into the peaceful possession of the premises believing in good faith that the lessor owned the entire title in the premises, would be the value of the oil at the surface less the reasonable cost of production. Gladys City Oil Mfg. Co. v. Right of Way Oil Company (Tex. Civ. App.) 137 S. W. 171; Guffey v. Smith, 237 U. S. 101. This rule is supported by this court in the case of Barnes v. Winona Oil Company, 83 Okla. —, 200 Pac. 985.

The judgment of the trial court is affirmed.

HARRISON, C. J., and JOHNSON, McNEILL, and NICHOLSON, JJ., concur.